# United States Court of Appeals
## For the First Circuit

No. 14-2304

RAÚL ALBERTO GUADALUPE-BÁEZ ET AL.,

Plaintiffs, Appellants,

v.

HÉCTOR PESQUERA ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

Javier A. Morales Ramos for appellants.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
with whom Margarita L. Mercado-Echegaray, Solicitor General, was
on brief, for appellees Héctor Pesquera, Héctor Orozco, Carlos
Rosa, Guillermo Somoza-Colombani, and Luis Sánchez-Betances.
Juan J. Casillas-Ayala, Luis F. Llach-Zúñiga, Natalia E. Del
Nido-Rodríguez, and Casillas Santiago Torres LLC on brief for
appellee José R. Román-Abreu.

April 20, 2016

**SELYA**, **Circuit Judge**.  This case requires us to revisit the Rule 12(b)(6) pleading threshold.  It involves a plaintiff who reasonably believes that he was shot by a police officer but who thereafter was deprived of access to information that would have enabled him to establish the facts and circumstances surrounding the incident.  The district court determined that the allegations in the plaintiff's amended complaint lacked the requisite plausibility and therefore dismissed the action.  See Guadalupe-Báez v. Police Officers A-Z, No. 13-1529, 2014 WL 4656663, at *8 (D.P.R. Sept. 17, 2014).  After careful consideration, we reverse in part.

## I.  BACKGROUND

We begin with the Puerto Rico Police Department (PRPD).  The PRPD has a tarnished history of civil rights violations.  In 2008, the United States Department of Justice (DOJ) commenced an investigation into whether the PRPD had demonstrated a pattern and practice of conduct that deprived citizens of their constitutional rights.  See 42 U.S.C. § 14141.  Some three years later, the DOJ issued its report (the Report), which concluded that the PRPD was "broken in a number of critical and fundamental respects" and that PRPD officers had "engage[d] in a pattern and practice of excessive force in violation of the Fourth Amendment."  The Report went on to identify many other systemic deficiencies, including inadequate

- 2 -

officer training, faulty supervision, lax discipline, and chronic failures to investigate and remediate officer wrongdoing.

In December of 2012, the DOJ — with the goal of reaching an agreement for the PRPD's reform — filed a section 14141 suit against the PRPD in the United States District Court for the District of Puerto Rico. Roughly seven months thereafter, the DOJ and the PRPD reached a settlement. The district court continues to monitor the PRPD's compliance with the settlement agreement.

Against this backdrop, we turn to the case at hand. In July of 2012, plaintiff-appellant Raúl Alberto Guadalupe-Báez (Guadalupe) was shot and badly wounded in the vicinity of San Lorenzo, Puerto Rico, after one of several police vehicles closely approached him.[1] Based on the proximity of the police vehicles, Guadalupe plausibly alleged that he had been shot by a police officer. But the police seem to have stonewalled, and Guadalupe was unable to ascertain either the identity of the shooter or other critical information about the circumstances surrounding the incident. For aught that appears, the shooting was entirely without justification.

---

[1] Originally, Guadalupe's mother and aunt appeared as additional plaintiffs. The district court dismissed the section 1983 claims of these additional plaintiffs because "[o]nly persons who have been subject to constitutional deprivations may bring actions under § 1983." Guadalupe-Báez, 2014 WL 4656663, at *3 (quoting Núñez González v. Vázquez Garced, 389 F. Supp. 2d 214, 218 (D.P.R. 2005)). Guadalupe has not challenged this ruling on appeal, so we treat him as the sole plaintiff and appellant.

Puerto Rico officials did launch a pair of investigations into the incident, one led by Héctor Orozco (Orozco) of the PRPD's Criminal Investigation Center in Caguas and the other led by Carlos Rosa (Rosa) of the Special Investigations Bureau (SIB) of the Puerto Rico Department of Justice. Neither investigation resulted in Guadalupe's learning the identity of his shooter, and the probes were terminated without any charges being filed.

In July of 2013 — ten days before the DOJ and the PRPD reached their settlement — Guadalupe filed suit. When motions to dismiss were served, the district court ordered Guadalupe either to amend his complaint or to show cause why his suit should not be jettisoned. In response, Guadalupe filed an amended complaint seeking damages against named and unnamed members of the PRPD, the San Lorenzo municipal police, and the Puerto Rico Department of Justice.[2] See 42 U.S.C. §§ 1983, 1985. The following parties were named as defendants:

- "Unnamed Police Officers A-Z" (the "John Doe" defendants), for various acts, including excessive force against Guadalupe in violation of the Fourth Amendment;

---

[2] The amended complaint also included supplemental claims under Puerto Rico law. These claims, along with Guadalupe's Fourth Amendment claims, were eventually dismissed without prejudice, and it would serve no useful purpose to describe them in detail.

- Héctor Pesquera (Pesquera), Superintendent of the PRPD at the time of the shooting; José Román-Abreu (Román), the Mayor of the Municipality of San Lorenzo and commander-in-chief of the San Lorenzo municipal police at the time of the shooting; Guillermo A. Somoza-Colombani (Somoza), Secretary of Justice and commander-in-chief of the SIB at the time of the shooting; and Luis Sánchez-Betances (Sánchez), Somoza's successor as Secretary of Justice (collectively, the supervisory defendants), for negligent training, entrustment, and supervision of the unnamed police officers;

- Howard Delgado (Delgado), a PRPD officer, Orozco, and Rosa, for obstructing justice and conspiring to deprive Guadalupe of the right to seek legal redress.

Guadalupe's amended complaint relied on the Report to show, among other things, a "pattern and practice of use of excessive force . . . caused by the adoption and use of inadequate policies and procedures, insufficient training, inadequate supervision, deficient complaint processes and ineffective disciplining."

The defendants renewed their motions to dismiss. While these motions were pending, the PRPD, in August of 2014, disclosed more documents to Guadalupe. These belatedly produced documents indicated — for the first time — the identity of the shooter. Approximately one month later (and without Guadalupe having made any further submission to the district court), the court granted

the defendants' motions to dismiss.  See Guadalupe-Báez, 2014 WL 4656663, at *8.  Pertinently, the court concluded that Guadalupe's supervisory liability and conspiracy claims failed to satisfy the minimum requirements of Rule 12(b)(6).  See id. at *4-7.

Guadalupe moved for reconsideration, see Fed. R. Civ. P. 59(e), citing the new information belatedly disclosed by the PRPD. The district court summarily denied the motion, stating that Guadalupe had failed to present this information to the court in a timely manner.

Guadalupe now appeals both the dismissal of his complaint and the denial of his motion for reconsideration.

## II.  ANALYSIS

We review de novo a district court's order granting a motion to dismiss under Rule 12(b)(6).  See Medina-Velázquez v. Hernández-Gregorat, 767 F.3d 103, 108 (1st Cir. 2014); SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc).  "In conducting this review, we accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012).  We may supplement such "facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

It is axiomatic that a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see Grajales, 682 F.3d at 44.

We have choreographed a two-step pavane for assessing the sufficiency of a complaint. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). At the start, "an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). Then, the court must determine whether the well-pleaded facts, taken in their entirety, permit "the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). It is with this progression in mind that we turn to Guadalupe's asseverational array.

## A. Supervisory Liability.

Guadalupe's most loudly bruited claims sound in supervisory liability under 42 U.S.C. § 1983. Such a claim has

two elements: first, the plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights. See Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008). Second, the plaintiff must show that "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Id. (alterations in original) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988)).

Supervisory liability is sui generis. Thus, a supervisor may not be held liable under section 1983 on the tort theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority. See Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014). This does not mean, however, that for section 1983 liability to attach, a supervisor must directly engage in a subordinate's unconstitutional behavior. See Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998). Even so, the supervisor's liability must be premised on his own acts or omissions. See Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989). Mere negligence will not suffice: the supervisor's conduct must evince "reckless or callous indifference to the constitutional rights of others."

Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 92 (1st Cir. 1994).

If a plaintiff relies on a theory of deliberate indifference, a three-part inquiry must be undertaken. See Ramírez-Lluveras, 759 F.3d at 20. In the course of that inquiry, the plaintiff must show "(1) 'that the officials had knowledge of facts,' from which (2) 'the official[s] can draw the inference' (3) 'that a substantial risk of serious harm exists.'" Id. (alteration in original) (quoting Ruiz-Rosa v. Rullán, 485 F.3d 150, 157 (1st Cir. 2007)).

"[D]eliberate indifference alone does not equate with supervisory liability." Figueroa-Torres v. Toledo-Dávila, 232 F.3d 270, 279 (1st Cir. 2000) (alteration in original) (quoting Camilo-Robles, 151 F.3d at 7). Causation remains an essential element, and the causal link between a supervisor's conduct and the constitutional violation must be solid. See Ramírez-Lluveras, 759 F.3d at 19. This causation requirement "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995). That is a difficult standard to meet but far from an impossible one: a plaintiff may, for example, prove causation by showing inaction in the face of a "known history of widespread abuse sufficient to alert a supervisor to ongoing violations." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir.

1994).  "[I]solated instances of unconstitutional activity" will not suffice.  Id.

In addition, a supervisor must be on notice of the violation.  See Ramírez-Lluveras, 759 F.3d at 20.  Such notice may be either actual or constructive.  See Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011).

Before us, Guadalupe argues that the district court erred in dismissing his supervisory liability claims both because it failed to give proper evidentiary weight to the Report and because it imposed too demanding a pleading standard.  We agree in part.

The amended complaint alleges that each of the supervisory defendants "negligently confided and entrusted" the unnamed police officers "with the authority to discharge their apparent duties."  And as to each, the amended complaint also alleges that:

> [He] is responsible to [Guadalupe] for his own actions and omissions, negligent entrustment and negligent supervision . . . a behavior . . . that . . . could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence, amounting to deliberate indifference and reckless disregard of [Guadalupe's] rights and guarantees under the law, and improperly training/supervising his subordinates.

The complaint then alleges that every one of the supervisory defendants failed to take necessary investigatory or remedial action after the shooting.

Certain other allegations, relevant only to Pesquera, Somoza, and Sánchez, likewise bear on these supervisory liability claims. As to this group of defendants, the amended complaint further alleges that each member of the group adopted policies that preserved "the pattern and practice of use of excessive force."

Given this series of averments, Guadalupe's best case is against Pesquera (who became Superintendent of the PRPD after the Report became public and held that office at the time of the shooting). The district court nonetheless dismissed the supervisory liability claim against Pesquera, concluding that Guadalupe's allegations were insufficient to "connect the dots" and demonstrate that Pesquera's conduct was affirmatively linked to the harm that eventuated. Guadalupe-Báez, 2014 WL 4656663, at *6. We think that the court set the bar too high: viewed as part of the tableau constructed by the Report, Guadalupe has stated a supervisory liability claim against Pesquera that is plausible on its face.

As Superintendent, Pesquera bore the ultimate responsibility for overseeing and directing all administrative, operational, training, and disciplinary aspects of the PRPD. An appreciable amount of time elapsed between the issuance of the Report and the shooting. Guadalupe alleges, though, that Pesquera continued — or at least failed to ameliorate — "policies which

- 11 -

cause the pattern and practice of use of excessive force." When this allegation is evaluated in conjunction with the rampant constitutional violations limned in the Report and the parade of horribles allegedly visited upon Guadalupe, a plausible inference exists that Pesquera either condoned or at least acquiesced in the offending conduct — conduct that is affirmatively linked to the harm Guadalupe suffered. Thus, Pesquera may be subject to section 1983 liability as a supervisor for that harm.

Any claim by Pesquera that he was unaware of the substantial risk of the serious harm that befell Guadalupe would constitute deliberate indifference to the reality of the dysfunction that Pesquera inherited when he took over as Superintendent of the PRPD. See, e.g., Ramírez-Lluveras, 759 F.3d at 20; Maldonado-Denis, 23 F.3d at 582. The short of it is that Guadalupe's supervisory liability claim against Pesquera crosses the plausibility threshold because the DOJ has given him a leg up. Indeed, it is through such reasoning that district courts in Puerto Rico have consistently given weight to the Report and declined to dismiss analogous claims during the pleading phase. See, e.g., Cabrera-Berrios v. Pedrogo, 21 F. Supp. 3d 147, 153 (D.P.R. 2014); Molina v. Vidal-Olivo, 961 F. Supp. 2d 382, 384-86 (D.P.R. 2013); Jorge v. Police Dep't of P.R., No. 11-2268, 2013 WL 792827, at *3 (D.P.R. Mar. 1, 2013).

We add that plausibility determinations cannot be made in the abstract. Here, all that Guadalupe could reasonably know (or be expected to ascertain) at the time he filed suit was that an unidentified police officer had shot him for no apparent reason. But when combined with the Report, that is enough to get Guadalupe across the plausibility threshold: such random and anonymous violence appears to be a predictable culmination of the systemic problems documented in the Report. In this instance, then, the Report plays a critical role in bridging the plausibility gap.

Nor is there anything unfair about this result. The existence of the Report put Pesquera on luminously clear notice that he might become liable, in his supervisory capacity, should his acts and omissions contribute to the continuation of the pathologies described in the Report. See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding that a series of investigative reports documenting systemic deficiencies in a jail put the defendant-supervisor on notice of the risk of the harm that befell the plaintiff); see also Turkmen v. Hasty, 789 F.3d 218, 226 (2d Cir. 2015) (explaining that a report incorporated into a complaint may "provide invaluable context" and "help orient [a court's] analysis of the [c]omplaint").

To be sure, Guadalupe's claim against Pesquera, as pleaded, is not a textbook model. He could have included more particulars about Pesquera's role and responsibilities as

Superintendent of the PRPD and tied such details to the known circumstances of his shooting. But we have said before, and today reaffirm, that "[a] high degree of factual specificity is not required at the pleading stage." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 56 (1st Cir. 2013). In our view, there is enough here — though not by much — to permit Guadalupe to proceed to discovery.

There is one loose end. Pesquera argues, in the alternative, that he is at least entitled to qualified immunity because the complaint does not adequately allege that he "was on notice that his actions or inactions put the citizens' lives at risk." We do not agree.

To determine whether a defendant is entitled to qualified immunity at the motion to dismiss stage, we ask "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)). A right is "clearly established" if "the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." Maldonado, 568 F.3d at 269. Because the Report put Pesquera on

clear notice of his potential liability, Pesquera plainly cannot satisfy one of the showings required for qualified immunity.

### B.  <u>Other Supervisory Defendants</u>.

As to the other supervisory defendants (Román, Somoza, and Sánchez), the order of dismissal stands on a different footing. Though Guadalupe's allegations against Pesquera are considerably bolstered by the findings contained in the Report, these findings do not help him against the other supervisory defendants. We explain briefly.

Román was named in the suit as the head of the San Lorenzo municipal police. Yet, the Report has no visible connection with the structure, training, oversight, or operations of the San Lorenzo municipal police. Equally as important, the amended complaint does not so much as attempt to forge a link between the Report and any wrongdoing on the part of the municipal police. Without the bolstering effect of the Report, Guadalupe's bare and conclusory allegations against Román lack the requisite specificity to push his claim across the plausibility threshold. See <u>Ocasio-Hernández</u>, 640 F.3d at 12.

The claims against Somoza and Sánchez (both former Secretaries of Justice) are similarly attenuated. Those claims, as recited in the amended complaint, contain only the gauziest of generalities; they fail either to specify the relationship between the SIB and the PRPD or to indicate what supervisory authority (if

any) the SIB exercises over the PRPD. In the absence of allegations placing the SIB and its leaders somewhere in the relevant chain of command, we cannot impute the pervasive misconduct by the PRPD described in the Report to the SIB. It follows that Guadalupe's supervisory liability claims against Somoza and Sánchez rest solely on their positions of authority. That is not a permissible basis for a finding of supervisory liability under section 1983. See Ramírez-Lluveras, 759 F.3d at 19; Ocasio-Hernández, 640 F.3d at 16.

To say more on this issue would be supererogatory. "[W]e have repeatedly held that . . . broad allegations against high-ranking government officials fail to state a claim." Feliciano-Hernández, 663 F.3d at 534. Accordingly, the district court did not err in dismissing the supervisory liability claims against Román, Somoza, and Sánchez.

### C. Claims Against Other Defendants.

The amended complaint alleges that Orozco and Rosa, who headed the dual investigations into the shooting incident, are liable under sections 1983 and 1985 of Title 42 for obstructing justice and conspiring to deprive Guadalupe of his right to seek legal redress. It further alleges that Guadalupe's right to seek legal redress was impeded by their failure to investigate the incident properly. Relatedly, the amended complaint alleges, albeit vaguely, that Delgado somehow shared in these malefactions.

All of these claims are dead on arrival: Guadalupe has utterly neglected to develop any arguments on appeal with respect to them. Consequently, we deem these claims to be waived.[3] See Vázquez-Rivera v. Figueroa, 759 F.3d 44, 47 & n.1 (1st Cir. 2014); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

### D. **Motion for Reconsideration.**

Finally, Guadalupe appeals from the denial of his motion for reconsideration.[4] We review a district court's denial of a motion for reconsideration solely for abuse of discretion. See United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009). Such a motion must either establish a clear error of law or point to newly discovered evidence of sufficient consequence to make a difference. See Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 612 (1st Cir. 2000).

We discern no abuse of discretion in the district court's denial of Guadalupe's motion for reconsideration. Guadalupe received documents from the PRPD indicating the putative identity of his shooter on August 18, 2014. A month then elapsed before the district court granted the motions to dismiss on September 17. Yet Guadalupe — despite having been warned by the district court

---

[3] In point of fact, the only claims developed in Guadalupe's opening appellate brief — or addressed at all, for that matter — are his supervisory liability claims.

[4] Technically, Guadalupe's motion to reconsider was a motion to alter or amend the judgment. See Fed. R. Civ. P. 59(e). The nomenclature makes no meaningful difference.

that his amended complaint would likely not satisfy the plausibility standard — took no steps in the interim either to amend his complaint or otherwise to call the newly revealed information to the court's attention in some other way.

As this case illustrates, inaction has consequences. When a party seeks to alter or amend a judgment based on newly discovered evidence, the party must act with due diligence. Where, as here, he dallies, he can scarcely be heard to complain if the court denies the requested relief. See Allen, 573 F.3d at 53; Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005); cf. Vasapolli v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994) ("Unlike the Emperor Nero, litigants cannot fiddle as Rome burns. A party who sits in silence [and] withholds potentially relevant information . . . does so at his peril.").

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we reverse the judgment of dismissal as to defendant Pesquera, affirm the judgment in all other respects, and remand for further proceedings consistent with this opinion.[5] Costs shall be taxed against Pesquera and in favor of Guadalupe.

**So Ordered.**

---

[5] Because Guadalupe's Fourth Amendment claims and his "John Doe" claims against unnamed police officers were dismissed without prejudice, we envision no impediment to Guadalupe's filing of a suit, if he so chooses, against the recently identified shooter.

- 18 -