# United States Court of Appeals
## For the First Circuit

No. 16-2083

BENJAMIN RIGGS; LAURENCE EHRHARDT; and
RHODE ISLAND MANUFACTURERS ASSOCIATION,

Plaintiffs, Appellants,

v.

MARGARET CURRAN, PAUL ROBERTI, and HERBERT DESIMONE, JR.,
in their official capacity as members of the Rhode Island Public
Utilities Commission; NARRAGANSETT ELECTRIC COMPANY, INC., d/b/a
NATIONAL GRID; and DEEPWATER WIND BLOCK ISLAND, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Andrew A. Rainer, with whom Brody, Hardoon, Perkins & Kesten,
LLP, J. William Harsch, and J. William W. Harsch, Esq. & Associates
were on brief, for appellants.
Gerald J. Petros, with whom Adam M. Ramos and Hinckley, Allen
& Snyder LLP were on brief, for appellee Deepwater Wind Block
Island, LLC.
Leo J. Wold, Assistant Attorney General, Department of
Attorney General, was on brief, for appellees Curran, Roberti, and
Desimone, Jr.
Michael J. Fitzpatrick, with whom Day Pitney LLP was on brief,
for appellee Narragansett Electric Company, Inc.

July 10, 2017

**TORRUELLA**, **Circuit Judge**.    Benjamin Riggs, Laurence Ehrhardt, and the Rhode Island Manufacturers Association (collectively, "Plaintiffs") challenge the development of an offshore wind farm (the "Wind Farm") near Block Island, Rhode Island.   The district court dismissed Plaintiffs' claims, ruling that they were barred by Rhode Island's three-year personal injury statute of limitations.   We affirm.

## I.   BACKGROUND

### A.   Factual Background

In 2009, the Narragansett Electric Company, d/b/a National Grid ("National Grid") entered into a power purchase agreement with Deepwater Wind Block Island, LLC ("Deepwater"), pursuant to a Rhode Island statute seeking to facilitate the development of a "newly developed renewable energy resources project of ten (10) megawatts or less" near Block Island.   2009 R.I. Pub. Laws ch. 53, § 1.   Under the agreement, National Grid was to pass on the cost of constructing and operating the Wind Farm to mainland Rhode Island ratepayers, increasing their electricity rates for up to twenty years.

On December 10, 2009, National Grid submitted the agreement for approval to the Rhode Island Public Utilities Commission (the "PUC"), which, on March 30, 2010, rejected the application because it was not commercially reasonable.   The PUC

found, among other things, that ratepayers would pay above-market rates for the entire twenty-year period and that the project offered poor value when measured against other renewable-energy projects.

On June 30, 2010, National Grid submitted a slightly-revised power purchase agreement (the "PPA") after the Rhode Island General Assembly amended the statutory definition of "commercial reasonableness" applicable to the Wind Farm and directed the PUC to apply this amended standard in reviewing any future application. See 2010 R.I. Pub. Laws ch. 32, § 1 (codified at 39 R.I. Gen. Laws § 39-26.1-7). The PPA provided that "[t]he effectiveness of this Agreement . . . is conditioned upon and shall not become effective or binding until the receipt of the PPA Regulatory Approval," meaning "the PUC's approval of this Agreement without material modification or conditions pursuant to [R.I. Gen. Laws § 39-26.1-7]." On August 11, 2010, the PUC granted the approval, in large part due to the newly-adopted standard. The PUC issued the order memorializing its decision on August 16, 2010 (the "PUC Order"), stating that the PPA "met the intent and requirements of the 2010 Amendments to R.I. Gen. Laws § 39-26.1-7."

The PUC Order contained no conditions precedent, although the PPA's terms allowed Deepwater to subsequently terminate the approved and effective PPA if certain tax credit

-4-

deadlines in the Internal Revenue Code were not extended, if Deepwater could not secure tax equity financing, or if Deepwater failed to timely receive additional approvals from other government entities, including:

1.  Approval and a license from the Rhode Island Coastal Resources Management Council;

2.  Permits under the federal Rivers and Harbors Act and the federal Clean Water Act from the U.S. Army Corps of Engineers;

3.  A Conformity Determination/Air Emissions Permit and a General Stormwater Permit from the Environmental Protection Agency; and

4.  Approval from the Rhode Island Department of Transportation, the Rhode Island Natural History Survey, and several municipal entities for laying the cable transmitting power from the Wind Farm to the mainland.

After obtaining the PUC's approval, Deepwater applied for and received all required permits by the end of 2014. In 2015, after the project received new financing, construction of the Wind Farm became imminent.[1]

Throughout this period, the Wind Farm faced numerous challenges. Multiple parties, including members of the Rhode Island Manufacturers Association, intervened in the PUC proceeding. Some parties then challenged the PUC Order on state law grounds in

---

[1] Deepwater states that it began constructing the Wind Farm in 2015 and the Wind Farm became operational in December of 2016, but that is not part of the record.

the Rhode Island Supreme Court, and on August 1, 2011, that court affirmed the PUC Order. In re Review of Proposed Town of New Shoreham Project, 19 A.3d 1226 (R.I. 2011).

Thereafter, Benjamin Riggs filed two administrative petitions with the Federal Energy Regulatory Commission ("FERC")on August 22, 2012 and April 21, 2015, alleging that the PUC Order violated the Federal Power Act (the "FPA"), the Public Utilities Regulatory Policies Act ("PURPA"), and the Supremacy and Commerce Clauses of the U.S. Constitution. On October 18, 2012 and June 18, 2015, FERC issued notices of its intention not to act on the petitions and stated that "Mr. Riggs may himself bring an enforcement action against the Rhode Island Commission in the appropriate court." 141 F.E.R.C. ¶ 61,172 (2012); 151 F.E.R.C. ¶ 61,222.

## B. Procedural History

Plaintiffs are Rhode Island ratepayers who claim that their economic interests will be adversely affected because the PPA will raise their electricity bills. On August 14, 2015, four years and 364 days after the issuance of the PUC Order, Plaintiffs filed this lawsuit against three PUC commissioners, in their official capacities, National Grid, and Deepwater (collectively, "Defendants") in the United States District Court for the District of Rhode Island, arguing that the PUC Order violated the FPA,

-6-

PURPA, and the Commerce and Supremacy Clauses of the U.S. Constitution. The district court never reached the merits. Instead, it held that Plaintiffs' complaint was time-barred. Riggs v. Curran, 196 F. Supp. 3d 338 (D.R.I. 2016). It reasoned that 28 U.S.C. § 2462, the federal statute of limitations for civil enforcement actions, did not apply, as the case is neither a government enforcement action nor an enforcement action brought by a private attorney general. Id. at 340-41. Instead, the district court applied Rhode Island's three-year statute of limitations for personal injury actions to Plaintiffs' claims. Id. at 341-42.

The district court then determined that the clock started to run on Plaintiffs' claims on August 16, 2010, when the PUC Order was issued. Id. at 340. It rejected Plaintiffs' arguments that their causes of action accrued only when Defendants obtained all of the permits required by the PPA, when Plaintiffs were first charged higher rates, or after Plaintiffs exhausted all of their administrative remedies. Id. at 342-44.

## II. ANALYSIS

We review a district court's order granting a motion to dismiss under Rule 12(b)(6) de novo. Guadalupe-Báez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016). "In conducting this review, we accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Id.

(quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)).

## A.   Rhode Island's Three-Year Personal Injury Statute of Limitations Applies to Plaintiffs' Claims

The parties dispute which statute of limitations applies to this action.  The statutes governing Plaintiffs' causes of action do not contain specific statutes of limitations, so we first must determine whether a general federal statute of limitations applies to any of Plaintiffs' causes of action.  If no general federal statute of limitations applies, the statute of limitations governing Rhode Island's most analogous state cause of action applies "if it is not inconsistent with federal law or policy." Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 38 (1st Cir. 2006) (quoting Wilson v. García, 471 U.S. 261, 266-67 (1985)).

Plaintiffs' constitutional claims, brought under 28 U.S.C. § 1983, are governed by Rhode Island's statute of limitations for personal injury actions.  See Marrapese v. Rhode Island, 749 F.2d 934 (1st Cir. 1984) (applying Rhode Island's three-year statute of limitations for personal injury actions to a § 1983 action alleging constitutional violations); Walden, III, Inc. v. Rhode Island, 576 F.2d 945 (1st Cir. 1978) (same).

Rhode Island's three-year statute of limitations for personal injury actions also applies to Plaintiffs' claims under

the FPA and PURPA, although Plaintiffs urge us to apply the five-year statute of limitations in 28 U.S.C. § 2462, a general statute of limitations for "action[s], suit[s] or proceeding[s] for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise."  Plaintiffs cite a number of federal cases applying § 2462 to actions brought under the FPA, PURPA, or other similar enforcement statutes.  Many of those cases, however, involve an enforcement action by a federal agency.[2]  Others include private plaintiffs, but they are enforcement actions brought by private attorneys general standing in the government's shoes.  For example, Plaintiffs cite National Parks Conservation Ass'n v. Tennessee Valley Authority, 480 F.3d 410 (6th Cir. 2007), a private-citizen suit to enforce the pollution limitations imposed by the Clean Air Act.  But the Clean Air Act authorizes "any person [to] commence a civil action on his own behalf" against anyone who violates emission standards and authorizes the district courts "to apply any appropriate civil penalties" in those private suits.

---

[2]  Cases cited by Plaintiffs that fall into this category include: 3M Co. (Minn. Mining & Mfg.) v. Browner, 17 F.3d 1453, 1455-60 (D.C. Cir. 1994) (applying § 2462 to an administrative civil penalty case brought by the Environmental Protection Agency); FERC v. Barclays Bank PLC, 105 F. Supp. 3d 1121, 1131 (E.D. Cal. 2015), as amended (May 22, 2015) ("The parties agree that the applicable statute of limitations is governed by 28 U.S.C. § 2462 . . . ."); Fed. Election Comm'n v. Nat'l Right to Work Comm., Inc., 916 F. Supp. 10, 13 (D.D.C. 1996) (applying § 2462 to enforcement of civil penalties by the Federal Election Commission).

42 U.S.C. § 7604(a); see also Nat'l Parks, 480 F.3d at 415 n.3.[3] Private attorneys general enjoy this five-year tolling statute because they do not "personally benefit from bringing the action." Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1522 (9th Cir. 1987) (applying § 2462 to a private enforcement action under the Clean Water Act). Rather, they stand in the shoes of a regulatory agency.

Plaintiffs, however, do not stand in FERC's shoes to enforce the FPA or PURPA; they seek to redress their own economic injuries caused by increased electricity rates. Therefore, Rhode Island's statute of limitations for personal injury actions, rather than § 2462, applies to Plaintiffs' FPA and PURPA claims.[4]

---

[3] Other cases cited by Plaintiffs that fall into this category include: Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 451 F.3d 77, 88 n.14 (2d Cir. 2006) (applying § 2462 to a private enforcement action under the Clean Water Act); Trawinski v. United Techs., 313 F.3d 1295, 1298 (11th Cir. 2002) (applying § 2462 to a private enforcement action under the Energy and Policy Conservation Act); Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1522 (9th Cir. 1987) (applying § 2462 to a private enforcement action under the Clean Water Act for violation of Chevron's National Pollutant Discharge Elimination System permit); Tri-Dam v. Schediwy, No. 1:11-CV-01141 AWI-SMS, 2011 WL 6692587, at *5 (E.D. Cal. Dec. 21, 2011) ("Tri-Dam brought this action . . . alleging that Defendants violated a permit" and "[t]he parties have identified 28 U.S.C. § 2642 as a relevant federal statute of limitations.").

[4] Plaintiffs do not dispute that, if § 2462 does not apply, Rhode Island's personal injury statute of limitations is the appropriate analogue.

## B. Plaintiffs' Claims Are Barred by the Applicable Statute of Limitations

Plaintiffs assert that, even under Rhode Island's three-year statute of limitations, their claims survive because they did not become ripe for adjudication until late 2014, when Deepwater had received all of the permits necessary to complete the Wind Farm, at the earliest. Defendants, meanwhile, defend the district court's ruling that the clock began to run when the PUC Order issued on August 16, 2010.

### 1. Legal Background

We have previously decided three cases that are particularly relevant to this dispute: City of Fall River v. FERC, 507 F.3d 1 (1st Cir. 2007); Weaver's Cove Energy, LLC v. Rhode Island Coastal Resources Management Council, 589 F.3d 458 (1st Cir. 2009); and Town of Barnstable v. O'Connor, 786 F.3d 130 (1st Cir. 2015).

In Fall River, the plaintiffs challenged a FERC order granting conditional approval to an energy company to construct a liquefied natural gas ("LNG") terminal. 507 F.3d at 3. In its order granting the conditional approval, FERC imposed numerous conditions precedent, "including approval of the vessel transportation plan by the United States Coast Guard (the "USCG") and consistency with the Wild and Scenic Rivers Act, as determined by the Department of the Interior (the "DOI")." Id. The

-11-

plaintiffs brought their suit before either the USCG or the DOI had made a final decision. Id. at 5. We held that FERC's order was not ripe for review. Id. at 6. FERC's approval was "expressly conditioned on approval by the USCG and the DOI," but neither agency had approved the project at the time of the appeal, and both had "expressed serious reservations about the project." Id. at 7. Because FERC's approval was not final without decisions by the USCG and the DOI, we thought it "wiser to allow the agencies to continue their decision-making process at least until final authorization [was] granted by all three agencies." Id. at 7-8. We observed that this would not cause undue hardship to the plaintiffs because "the statute of limitations period [would] not begin to run . . . until [the energy company] obtain[ed] those approvals," and so they could renew their claims at a later date. Id. at 7.

Weaver's Cove involved the same LNG terminal. 489 F.3d at 465. In that case, a Rhode Island agency raised two "regulatory barriers" to the project. Id. at 461. Whether the energy company could meet the requirements of the conditional FERC approval at issue in Fall River and obtain a necessary approval from the Army Corp of Engineers were potentially contingent on the validity of those barriers. Id. at 465. We determined that the issue was ripe for review. Id. at 468. We distinguished Fall River

-12-

because, in that case, FERC's order was contingent on other conditions, including the decisions of the USCG and the DOI, and so "we could not be sure our opinion would not be advisory." Id. at 468-69. In Weaver's Cove, however, the Rhode Island agency's requirements "would cease to be barriers to ultimate approval of the project," and so our decision would be final even though it "might not secure the project's ultimate approval." Id. at 469.

In Barnstable, the third and final case, the plaintiffs sued commissioners of the Massachusetts Department of Public Utilities ("DPU"), Cape Wind Associates ("Cape Wind"), and NSTAR Electric Company ("NSTAR"). 786 F.3d at 133-34. The plaintiffs alleged that the DPU commissioners violated the Commerce Clause and the Supremacy Clause by approving, and possibly forcing, a power purchase agreement between Cape Wind and NSTAR for power generated by Cape Wind's proposed offshore wind project. Id. at 137. The district court dismissed the plaintiffs' claims, and before we could hear the plaintiffs' appeal, NSTAR terminated the contract with Cape Wind, although Cape Wind contested the validity of that termination. Id. at 142. After supplemental briefing, we found that the case was ripe, even in light of the recent contract dispute, because the basic question raised by the suit -- whether the DPU "unconstitutionally forced NSTAR to enter a contract with Cape Wind" -- depended only on "events that ha[d]

-13-

already occurred." Id. at 143. Therefore, although the contract dispute between the parties raised the likely possibility that the case would be moot in the future, that possibility did not implicate whether the precise issue currently before the court was ripe for decision. Id. We reiterated that a case is ripe for decision if a holding on the merits would cause the contested agency action to "cease to be barriers to ultimate approval of the project." Id. (quoting Weaver's Cove, 589 F.3d at 468-69).

2. **Plaintiffs' Claims Accrued More Than Three Years Before They Filed Their Complaint**

This case is distinguishable from Fall River, on which Plaintiffs rely, for one crucial reason: FERC's order in Fall River was specifically conditioned on the energy company obtaining favorable determinations from the USCG and the DOI. 507 F.3d at 3. There was no final order because the conditions precedent in FERC's conditional order had not been satisfied. Thus, the challenge to FERC's order was not ripe.

This case is more similar to Weaver's Cove and Barnstable, where we found the plaintiffs' claims ripe. Although there were numerous hurdles to completing the Wind Farm when the PUC Order issued, the same was true in those two cases, including similar approvals from other regulatory bodies in Weaver's Cove. But, like the regulatory decisions in Weaver's Cove, the PUC Order was a discrete, final decision; later decisions by other agencies

-14-

could not change the PUC Order, unlike FERC's conditional order in Fall River. The PUC Order also affected the "ultimate approval of the project," Weaver's Cove, 589 F.3d at 469, because if it was unconstitutional or exceeded the PUC's authority, the Wind Farm might never be constructed.

Plaintiffs' argument that their claims were not ripe because the project could be derailed by future regulatory decisions or a lack of financing is foreclosed by Barnstable. The PUC Order is unrelated to those other potential barriers, and Plaintiffs' constitutional claims were not affected by the existence of future contingencies. The fact that the project might be derailed implicates mootness, not ripeness. An earlier-filed case could have become moot if the Wind Farm was not completed, but "[i]f we were to find the possibility of future mootness to be the type of contingency that would create a lack of ripeness, we would simply be changing mootness doctrine to signal a lack of jurisdiction not merely when a controversy is moot, but also when it might become moot." Barnstable, 786 F.3d at 143.

Plaintiffs' claims thus accrued when the PUC Order became final.[5] Because Plaintiffs filed their claims more than

---

[5] The district court ruled that the PUC Order was final on August 16, 2010, the day PUC issued it. We note that the Rhode Island Supreme Court did not affirm the PUC Order until August 1, 2011. No party argues that the PUC Order became final on that date, however, and even if it did, that decision also issued more

-15-

three years later, their claims are barred by the applicable three-year statute of limitations.

### III.  CONCLUSION

For the reasons stated, we affirm the district court's judgment.  Costs to appellees.

**Affirmed.**

---

than three years before Plaintiffs filed their complaint.  We therefore need not address whether that appeal affected the finality of the PUC Order.