# United States Court of Appeals
## For the First Circuit

No. 23-1030

MELISSA ING,

Plaintiff, Appellant,

v.

TUFTS UNIVERSITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Gelpí, and Montecalvo,
Circuit Judges.

Mitchell J. Notis, with whom Law Office of Mitchell J. Notis
was on brief, for appellant.
Jeremy M. Sternberg, with whom Miriam J. McKendall, Douglas
R. Sweeney, and Holland & Knight LLP were on brief, for appellee.

August 29, 2023

**MONTECALVO, Circuit Judge**. Melissa Ing sued her former employer, Tufts University ("Tufts"), alleging that Tufts denied her a full professor position on the basis of sex discrimination and/or retaliation for engaging in protected conduct in violation of federal and state antidiscrimination laws, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.; and Mass. Gen. Laws ch. 151B, § 4. The district court denied Ing's claims on summary judgment and declined her invitation to alter or amend that ruling under Fed. R. Civ. P. 59(e). Ing timely appealed the district court's rulings. Seeing no error, we affirm.

## I. Background

"We recount the facts in the light most favorable to [Ing], who was the non-moving party at summary judgment."[1] Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 172 (1st Cir. 2015).

---

[1] Before the district court, Ing objected to only 8 out of 192 material facts proffered by Tufts and stated that she "d[id] not dispute the other facts set forth by" Tufts. Accordingly, under the applicable local rule, the balance of Tufts's material facts are deemed admitted. L.R. D. Mass. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."); see also López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 26 (1st Cir. 2023) ("We have repeatedly emphasized the importance of complying with [such a] local rule and have implored litigants to comply or ignore it 'at their peril.'" (quoting Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007))).

## A. Harassment Investigation

In 2011, Ing began work as a non-tenure/contract track associate professor at Tufts's School of Dental Medicine ("SDM"). In June 2017, Tufts's Office of Equal Opportunity ("OEO") initiated an investigation into allegations that Ing had been sexually harassed by fellow SDM instructor Roland Vanaria. Ing made the following allegations: (1) that Vanaria had asked her out on a date; (2) that Vanaria had asked her if she wanted to "have some monkey business"; (3) that Vanaria had asked her to lift up her lab coat on numerous occasions; and (4) that Vanaria leered at her breasts and legs.

The OEO investigator separately interviewed Ing, Vanaria, and Peter Arsenault, Ing's SDM division head. The OEO investigator could only establish that Vanaria had asked Ing on a date and believed Vanaria's denial as to the balance of Ing's allegations.

Over the next several months, Ing informed Arsenault on two occasions that she was scheduled to work on the same floor as Vanaria. Notwithstanding Ing's failure to persuade the OEO investigator that Vanaria had done anything improper, in both instances Arsenault -- in concert with OEO and other SDM administrators -- adjusted the schedule to ensure that Vanaria was not working on the same floor as Ing. Ing also informed the OEO investigator that Vanaria was spending time in the conference room

near her office.  Tufts removed Vanaria's swipe access to the entire office suite where Ing's office was located.

## B. 2018 Promotion Cycle

In November 2017, Ing decided that she wanted to apply to be promoted to a full professor.  The guidelines and criteria for faculty promotion require an applicant to receive the endorsement of their department chair before submitting a dossier detailing their experience.  When Ing met with her department chair and the SDM Associate Dean for Faculty, she was advised that candidates typically spend six to twelve months compiling their dossiers, which must demonstrate an applicant's achievement in "Service, Citizenship, and Professionalism," and two other areas of excellence.  Ing received the endorsement of her department chair and submitted her dossier in February 2018.  She selected the Teaching area and Educational Leadership area for her two additional areas of excellence.  While compiling her dossier, Ing solicited the opinion of two outside advisors about whether it would pass muster, and both opined that it might not.

The Faculty, Appointments, Promotions, and Tenure Committee ("FAPTC") reviewed Ing's dossier, and her application was presented to the committee twice.  First, on March 27, 2018, a committee member relayed his concern that Ing did not satisfy the criteria for the Educational Leadership area of excellence because she purported to be a course director for workshops that

- 4 -

met on only two occasions. A second committee member was assigned to present Ing's dossier at the FAPTC's next meeting to confirm the first committee member's conclusion that Ing did not satisfy the criteria for promotion to full professor. The second presentation occurred on April 3, 2018, and this committee member agreed with the initial presentation that Ing did not meet the Educational Leadership criteria. The second committee member went further and noted that Ing did not serve in a leadership position, did not chair any committees, and did not actively participate in any organizations related to education. It is undisputed that not a single member of the FAPTC knew about Ing's complaints against Vanaria.

At the conclusion of the April 3, 2018 meeting, five committee members voted against Ing's promotion, one abstained, and one voted to table the application. On September 19, 2018, the SDM Associate Dean of Faculty told Ing that she had not been promoted and explained the reasons why, including that "the major problem" was with Ing's self-selected Educational Leadership area of excellence. Specifically, the SDM Associate Dean of Faculty confirmed that the supporting documents submitted by Ing with her dossier did not qualify her as a "course director" under the promotion guidelines. The following day, Ing's department chair reviewed the FAPTC's denial letter with her and the SDM Dean sent Ing a letter reiterating the reasons she was denied a promotion.

- 5 -

The FAPTC concluded that Ing was not a "course director" because she had only directed a brief workshop. Ing disputed this conclusion.

In January 2019, Ing requested a more detailed explanation as to why she was denied a promotion. The SDM Dean acquiesced to Ing's request and sent a letter explaining that she was denied a promotion because Ing's dossier lacked leadership roles, lacked course directorship, and did not "represent the level of expectations that FAPTC['s] Promotion Guidelines dictate for promotion to the rank of Professor." Ing did not appeal the promotion denial, despite being advised that she could do so.

### C. 2019 Promotion Cycle

As of November 1, 2018 -- after the decision regarding Ing's promotion had already been made and communicated to Ing -- Andrea Zandona became the new chairperson of Ing's department. Ing met with Zandona on December 13, 2018, and told her about the sexual harassment report against Vanaria. Ing alleges that during the January 2019 meeting at which Ing requested a more detailed explanation as to why she was not promoted, Zandona told Ing that she "most likely [was] not going to promote" her.

No other attendee of that meeting recalled Zandona making that statement.[2]

In the ensuing months, Zandona and Ing met several times and communicated repeatedly about how Ing could improve her dossier and chances of promotion. Ing alleges that at one such meeting Zandona asked Ing how often she was attending sexual harassment therapy and told Ing that she needed to go more often. Zandona denies ever saying this.[3]

Ing implemented some, but not all, of Zandona's suggestions to improve her dossier. In October 2019, Ing again raised to Zandona her dissatisfaction with the FAPTC's decision not to promote her during the 2018 cycle and Tufts's subsequent handling of the denial. Once again, Zandona gave Ing specific suggestions for improvement and told her that once Zandona felt Ing had met the criteria for promotion, Zandona would write a supportive letter of endorsement. A few weeks later, Zandona informed Ing that she would not endorse her for the 2019 cycle because, in Zandona's opinion, Ing's dossier still did not merit promotion.

---

[2] Because Ing's Rule 56.1 statement contradicted this and alleged that Zandona stated that she "most likely [was] not going to promote [Ing]," we assume that the statement was made.

[3] Again, because Ing's Rule 56.1 statement contradicted this denial, we believe Ing's version of events and assume that Zandona made this statement.

Thereafter, Ing told Zandona that she felt "singled out" and felt that Zandona would never support her promotion. Zandona replied with a letter detailing seven specific ways in which Ing could improve her dossier and reiterated her commitment to helping Ing to work towards a successful submission for full professor.

Ing took a medical leave of absence in December 2019. She never returned to work, and her contract with Tufts expired in June 2021.

## II. Standard of Review

We review the grant of summary judgment de novo, "scrutiniz[ing] the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005). However, we will not "'draw unreasonable inferences or credit bald assertions, empty conclusions,' or 'rank conjecture.'" Brandt v. Fitzpatrick, 957 F.3d 67, 75 (1st Cir. 2020) (quoting Pina v. Children's Place, 740 F.3d 785, 795 (1st Cir. 2014)). Indeed, we have recognized that "[e]ven in employment discrimination cases" like the one at hand "where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Id. (quoting Ray v. Ropes & Gray LLP, 799 F.3d 99, 116-17 (1st Cir. 2015)).

- 8 -

"By contrast to the summary judgment standard, 'we review a district court's ruling on a Rule 59(e) motion for abuse of discretion.'" Theidon v. Harvard Univ., 948 F.3d 477, 495 (1st Cir. 2020) (quoting Franchina v. City of Providence, 881 F.3d 32, 56 (1st Cir. 2018)). A motion to alter or amend judgment "must either establish a clear error of law or point to newly discovered evidence of sufficient consequence to make a difference." Id. (quoting Franchina, 881 F.3d at 56).

### III. Discussion

On appeal, Ing insists that she set forth a prima facie case that Tufts denied her application for full professor because of sex discrimination and/or as retaliation for her filing a claim of sexual harassment, all in violation of federal and state antidiscrimination laws. There is substantial overlap between our analysis of these claims, but for sake of clarity we begin with the claims of discrimination, then turn to the claims of retaliation, and finally end with a few words on the district court's denial of Ing's Rule 59(e) motion.

### A. Sex Discrimination

"Title VII makes it unlawful for employers to discriminate based on sex," Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013), and Title IX similarly "prohibits gender-based discrimination in a wide array of programs and activities undertaken by educational institutions," Frazier v. Fairhaven Sch.

- 9 -

Comm., 276 F.3d 52, 65 (1st Cir. 2002). Under either statute, absent direct evidence of discrimination, "we invoke the three-step burden-shifting scheme outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to assess whether we can infer discrimination from the undisputed material facts." Theidon, 948 F.3d at 495; see Lipsett v. Univ. of P.R., 864 F.2d 881, 896-97 (1st Cir. 1988) (concluding that the standards governing claims arising under Title VII and Title IX are the same).

At the first step of this scheme, Ing bears the initial burden of establishing a prima facie case of discrimination "[u]nder the McDonnell Douglas framework employed by this court in assessing adverse tenure decisions." Theidon, 948 F.3d at 495. To make this showing, Ing must demonstrate that: "(1) she is a member of a protected class; (2) 'she was a candidate for tenure and was qualified under [Tufts's] standards, practices or customs'; (3) 'despite her qualifications she was rejected'; and (4) 'tenure positions . . . were open at the time [she] was denied tenure, in the sense that others were granted tenure in the department during a period relatively near to the time [Ing] was denied tenure.'" Id. (second alteration in original) (quoting Fields v. Clark Univ., 966 F.2d 49, 53 (1st Cir. 1992)).

The dispute at hand centers around whether Ing showed that she was qualified for the position of professor. The SDM Faculty Handbook specifically details what evidence will suffice

to show accomplishment in the Educational Leadership area. This evidence may include serving as a dean, department chair, or division head; chairing a standing or management committee; serving as a course director; and/or actively participating in organizations related to education.

Here, the record evidence shows that none of these requirements were met. The evaluators of Ing's dossier noted their concern with her "weak" Educational Leadership and that she had "minimal or no leadership in [e]ducation." The evaluators concluded that Ing was not a "course director" as contemplated in the SDM Faculty Handbook because the purported course was a workshop that met on only two occasions.

The reason for denying Ing a promotion was expounded upon by Tufts in subsequent communications, but each time highlighted the same general deficiencies: lack of academic and administrative leadership roles and "deficiency in . . . course directorship [because] a one-time 3-hour workshop does not compare to a 3, 6 or 9-month course." Ing wholly fails to engage with this reasoning and instead relies on her own conclusory allegations that she was qualified for promotion to full professor. However, to defeat summary judgment, in light of the raft of credible evidence that Tufts produced showing that Ing was not qualified for promotion, "she cannot rely on 'conclusory allegations.'" Theidon, 948 F.3d at 494 (quoting Ahern v. Shinseki, 629 F.3d 49,

54 (1st Cir. 2010)). Moreover, even the individuals Ing herself chose to consult about her dossier expressed doubt as to whether Ing's experiences and qualifications merited a promotion to professor. These undisputed facts evidence a lack in qualification and make plain that Ing has not made a showing of a prima facie case of discrimination.

Even if we assume that Ing could make out a prima facie case of discrimination, Ing's claim still fails further down the road of the McDonnell Douglas burden-shifting scheme because she has not shown the existence of a material fact to suggest that Tufts's proffered reason for not promoting her was merely pretextual and that the actual reason was discriminatory. See Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 94 (1st Cir. 2021). Ing contends that "numerous procedural irregularities in the process by which" her "promotion was denied" demonstrate pretext. As Ing tells it, the FAPTC deviated from standard procedure by failing to keep minutes for the meetings at which her application was discussed.

"Evidence that the employer deviated from its standard procedure or policies in taking an adverse employment action against a plaintiff may be relevant to the pretext inquiry," Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 50 (1st Cir. 2019), if the deviations are otherwise "inexplicable and troubling." Theidon, 948 F.3d at 499. However, Ing points to no

- 12 -

evidence indicating that, at the time her application was before the FAPTC, the committee's standard practice was to keep meeting minutes. Rather, the evidence in the record before us reveals that, at that time, the FAPTC did not keep meeting minutes for any meetings. And the absence of meeting minutes does not support an inference that Tufts's proffered reason for not promoting Ing was pretextual because other record evidence shows exactly what the FAPTC considered when making its decision. Specifically, the notes taken by the two committee members who reviewed and presented Ing's application were solely focused on her lack of accomplishment in Educational Leadership, and every FAPTC member deposed in this case testified that the committee's discussion focused only on Ing's dossier and qualifications.

Ing also points to a smattering of other alleged irregularities, such as an FAPTC member being asked to review her application after the vote had already been taken, the letter denying her application undergoing five drafts, and the five-month time gap between when Ing's application was voted on and when she was notified of the disapproval, to demonstrate pretext. This evidence, however, "is devoid of the inexplicable and troubling inconsistencies that give rise to a reasonable inference of pretext." Theidon, 948 F.3d at 499 (finding no evidence of pretext where university's failure to circulate materials to external reviewers amounted to an "administrative error"); see Ronda-Perez

- 13 -

v. Banco Bilbao Vizcaya Argentaria--Puerto Rico, 404 F.3d 42, 47 (1st Cir. 2005) (finding no evidence of pretext based on employer's failure to keep notes during investigative interview with plaintiff even though it kept notes during interviews with other employees).

Accordingly, we conclude that there is not even the slightest suggestion that Tufts's reason for not promoting Ing was pretextual. The district court correctly concluded that Ing's evidence was insufficient to create a material issue of fact and entered summary judgment in favor of Tufts on the discrimination claims.[4]

## B. Retaliation

To establish a prima facie case of retaliation under Title VII, Title IX, or Massachusetts state law, Ing must prove: "(1) she engaged in protected conduct; (2) she was subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct." Theidon, 948 F.3d at 505 (quoting Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018)); see id. at 508 (evaluating a prima facie case of retaliation under Mass. Gen. Laws ch. 151B, § 4 under the

---

[4] Because "Massachusetts law also makes use of the McDonnell Douglas burden-shifting framework" and requires a plaintiff to present evidence of pretext, Theidon, 948 F.3d at 505 (quoting Ray, 799 F.3d at 113 n.8), the foregoing analysis applies to both the federal and state discrimination claims.

same test).  The only element in dispute is whether Ing has shown a causal connection between her allegations of sexual harassment and Tufts's subsequent decision not to promote her.[5]  The district court found that Ing's protected activity "could not have been a but-for cause of the FAPTC's decision to reject her application" because "no member of the FAPTC knew of [] Ing's 2017 sexual harassment complaint."  This conclusion is supported by the record and uncontested by Ing on appeal.

Instead, to support the requisite causal connection, Ing focuses on a statement made by Zandona in January 2019 when Zandona purportedly told Ing that she "most likely [was] not going to promote [Ing]."  Ing argues that a jury could infer retaliatory intent from that comment because it was made "only 27 days after" Zandona and Ing first met and Ing told Zandona that she had filed a sexual harassment report.  Ing assumes that the relatively short time span between her telling Zandona about the report and Zandona saying she most likely would not promote Ing renders the causal connection between the two actions obvious.

---

[5] As the district court correctly pointed out, the standard of causation under Title VII and Massachusetts state law is that the "protected activity was a but-for cause of the alleged adverse action by the employer."  Theidon, 948 F.3d at 506 (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013)).  The standard of causation under Title IX is an unresolved question in this circuit, but we need not address it today because under either possible standard -- "but for" or "substantial or motivating factor," see id. -- Ing has not established a causal connection.

"[T]emporal proximity is one factor from which an employer's bad motive can be inferred," but "by itself, it is not enough -- especially if the surrounding circumstances undermine any claim of causation." Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 720 (1st Cir. 2014). Here, any inference of a retaliatory mindset is belied by the overwhelming evidence in the record that Zandona's conduct was inconsistent with bad motive. First, there is no evidence in the record that Zandona had ever met Vanaria. And, by the time Ing spoke to Zandona in December 2018, eighteen months had elapsed since the alleged harassment occurred. Thus, the record offers no basis from which to infer that Zandona would retaliate against Ing merely because Ing had reported sexual harassment allegations Ing had made over a year earlier against someone who was a stranger to Zandona.

Moreover, after Zandona made the alleged comment, she met or communicated with Ing on approximately eight occasions to work on Ing's dossier. Zandona repeatedly voiced her "goal . . . to . . . support [Ing]," and desire to "work to make[] sure that [Ing's] submission [to the FAPTC] w[ould] be successful." Zandona did not definitively indicate that she would not provide Ing with a letter of support until October 2019, and that decision was based on Zandona's opinion that Ing had failed to "demonstrate[] a significant development compared to [her] last submission in the area of Educational Leadership." See Theidon, 948 F.3d at 507

- 16 -

(concluding that inference of retaliation was "incapacitated" by the fact that the views expressed by department chair reviewing plaintiff's application for tenure "merely echoed concerns" previously voiced by other reviewers).

In short, Ing's interpretation of Zandona's comment "amounts to, at most, a 'conclusory allegation[] . . . or rank speculation' that cannot prevent summary judgment."  Id. at 506 n.41 (alteration in original) (quoting Ahern, 629 F.3d at 54). Thus, on this record, it cannot be plausibly inferred that the decision to deny Ing a promotion to full professor was tainted by retaliatory animus because Ing cannot establish a causal link between her protected activity and the adverse employment decision.  The district court correctly entered summary judgment in favor of Tufts on the retaliation claims.

## C. Rule 59(e)

Lastly, we turn to the district court's denial of Ing's motion for an altered or amended judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  A motion to alter or amend judgment "must either establish a clear error of law or point to newly discovered evidence of sufficient consequence to make a difference."  Id. at 508 (quoting Guadalupe-Báez v. Pesquera, 819 F.3d 509, 518 (1st Cir. 2016)).  The district court did not abuse its discretion in finding that Ing established neither.

Ing's motion argued that the district court ignored the fact that when Zandona stated she would not promote Ing, Zandona allegedly had no knowledge of Ing's qualifications. However, Ing had already made this argument in opposition to Tufts's motion for summary judgment. And, as the district court aptly noted, a motion to alter or amend is not "a mechanism to regurgitate 'old arguments previously considered and rejected.'" Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (quoting Nat'l Metal Finishing Co. v. BarclaysAmerican/Comm., Inc., 899 F.2d 119, 123 (1st Cir. 1990)). Ing failed to point to a manifest error of law or newly discovered evidence, and the mere "repetition of previous arguments is not sufficient to prevail on a Rule 59(e) motion." Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008) (quoting United States v. $23,000 in U.S. Currency, 356 F.3d 157, 165 n.9 (1st Cir. 2004)). Accordingly, there is no reason to disturb the district court's order denying Ing's Rule 59(e) motion.

## IV. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment and denial of the Rule 59(e) motion to alter or amend the same.