ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **JAHAIRA PONCE MORALES y OTROS**<br><br>Apelantes<br><br>v.<br><br>**COMISIONADO DE LA POLICIA ANTONIO LÓPEZ en su Capacidad Oficial y Personal y como Rep. de la SLG con su Cónyuge y Otros**<br><br>Apelados | KLAN202400027 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.: **BY2023CV02917**<br><br>Sobre: Violación de Derechos Civiles |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

Comparece ante nos, mediante *Apelación*, la señora Jahaira Ponce Morales, en representación de sí misma y de los menores Kattaleia Zoe Hernández Colón y Hommy Colón Ponce, y la señora Laura Ponce Ortiz (en conjunto, Demandantes o Apelantes), y nos solicitan que revoquemos la *Sentencia Parcial* del Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Dicha *Sentencia Parcial* desestimó la demanda por daños y perjuicios en contra de la señora Ana Escobar Pabón, Secretaria del Departamento de Corrección y Rehabilitación de Puerto Rico, el señor Antonio López Figueroa, Comisionado del Negociado de la Policía de Puerto Rico, el señor Roberto del Valle, Director de Seguridad del Centro de Tratamiento de Mujeres de Bayamón, el sargento Erasmo Martínez Torres, oficial del Complejo de Rehabilitación para Mujeres de Bayamón y la superintendente Wanda Montañez Santiago, Superintendente del Complejo para la Rehabilitación de Mujeres de

Bayamón (en conjunto, los Codemandados o Apelados), en sus capacidades personales.

Por los fundamentos discutidos a continuación, confirmamos la *Sentencia Parcial* emitida por el TPI.

## I.

El 2 de junio de 2022, la señora Shannel Colón Ponce (Sra. Colón Ponce), oriunda de Puerto Rico pero domiciliada en el estado de Pensilvania, EE. UU., falleció en custodia del Departamento de Corrección y Rehabilitación de Puerto Rico (DCR) en el Complejo de Rehabilitación para Mujeres en Bayamón. La Sra. Colón Ponce sufría de una condición mental e inestabilidad emocional, por lo que había recibido tratamientos médicos y fue sometida a un proceso de hospitalización involuntaria en enero de 2022 en Pensilvania.

Para el 2 de abril de 2022, la Sra. Colón Ponce viajó a Puerto Rico. El 20 de abril de 2022, luego de ser vinculada al hurto de un vehículo de motor, se entregó a la custodia de la Policía de Puerto Rico (Policía). En ese momento, y acompañada por familiares, la Sra. Colón Pérez le informó a los agentes de la Policía que sufría de una condición mental y que se sintió obligada a hurtar el vehículo de motor para huir de una persona que la perseguía. No obstante esta información, la Policía procedió a mantenerla bajo custodia pese que la Sra. Colón Ponce no contaba con representación legal ni existían cargos radicados en su contra. Tampoco le informaron a la familia de la Sra. Colón Ponce sobre alternativas o desvíos disponibles para personas que requieren tratamiento por condiciones mentales.

La Sra. Colón Ponce pasó cuarenta y ocho (48) horas bajo la custodia de la Policía antes de que se presentara una denuncia en su contra por violaciones al Código Penal de Puerto Rico. El 22 de abril de 2022, un tribunal determinó causa para arresto y señaló la Vista Preliminar para el 4 de mayo de 2022. Por no poder prestar

fianza, la Sra. Colón Ponce fue ingresada al Complejo de Rehabilitación de Mujeres de Bayamón.

El día de la Vista Preliminar, la Sra. Colón Ponce compareció acompañada por la Lcda. Samari Benítez de la Sociedad para la Asistencia Legal. La defensa solicitó una vista al amparo de la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, R. 240, para realizarle a la Sra. Colón Ponce una evaluación psiquiátrica, en vista a la condición en que se encontraba. En consecuencia, se suspendió la Vista Preliminar y se pospuso hasta el 10 de junio de 2022, en espera de la evaluación psiquiátrica solicitada. Alegadamente, esta fue programada para 8 de junio de 2022.

Lamentablemente, el 2 de junio de 2022, la Sra. Colón Ponce falleció en el Complejo de Rehabilitación de Mujeres de Bayamón bajo la custodia del DCR debido a un aparente suicidio. Nunca se le fue realizada la evaluación psiquiátrica al amparo de la Regla 240 de Procedimiento Criminal, *supra*. Los familiares de la Sra. Colón Ponce alegan que intentaron visitarla e indagar sobre su condición, pero no pudieron. Funcionarios del Complejo de Rehabilitación de Mujeres le indicaron que la Sra. Colón Ponce se encontraba en buen estado de salud y recibiendo tratamientos médicos.

El 25 de mayo de 2023, Jahaira Ponce Morales (madre de la Sra. Colón Ponce), por sí misma y en representación de los menores Kattaleia Zoe Hernández Colón (hija de la Sra. Colón Ponce) y Hommy Colón Ponce (hermano de la Sra. Colón Ponce), y Laura Ponce Ortiz (tía de la Sra. Colón Ponce) (en conjunto, los Demandantes o Apelantes) radicaron una *Demanda*[1] ante el TPI en contra del Gobierno de Puerto Rico y de varios funcionarios públicos. La misma fue enmendada el 15 de agosto de 2023.[2]

---

[1] Tomamos conocimiento judicial del caso BY2023CV02917 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 1.
[2] Apéndice de *Recurso de Apelación*, Anejo I, págs. 1-18.

La *Demanda* alega que varios funcionarios del Gobierno de Puerto Rico causaron la muerte de la Sra. Colón Ponce. Presentaron causas de acción al amparo de los Artículos 1536, 1538 y 1540 del Código Civil de Puerto Rico, 31 LPRA sec. 5311, *et seq.*, la Ley de Reclamaciones y Demandas Contra el Estado, Ley Núm. 104 de 29 de junio de 1955, 32 LPRA sec. 3077 *et seq.* (Ley de Pleitos), la Constitución de Puerto Rico, Const. ELA [Const. PR], LPRA, Tomo 1, la Constitución de Estados Unidos, LPRA, Tomo 1 y la Sección 1983 de la Ley federal de Derechos Civiles, 42 USC sec. 1983 (Sección 1983). Señalaron como responsables al:

> [Comisionado del Negociado de la Policía de Puerto Rico, Antonio López porque] era la autoridad suprema en cuanto a la elaboración y la ejecución de las políticas seguidas en el NPPR. Son ellos los llamados a ejecutar las leyes y reglamentos del Estado Libre Asociado de Puerto Rico sobre seguridad pública y protección, y responde por la disciplina, entrenamiento y supervisión de todos los empleados y oficiales del NPPR. Es el responsable de elaborar y poner en práctica las órdenes generales, protocolos, reglamentos y políticas decisionales relativas al entrenamiento, supervisión, disciplina y prácticas de seguridad y protección a ser empleadas por el NPPR. [...]
>
> [A la Secretaria del Departamento de Corrección y Rehabilitación, Ana Escobar porque] era la autoridad suprema en cuanto a la elaboración y la ejecución de las políticas seguidas en el DCR. Son ellos los llamados a ejecutar las leyes y reglamentos del Estado Libre Asociado de Puerto Rico sobre seguridad pública y protección de las personas privadas de libertad, y responde por la disciplina, entrenamiento y supervisión de todos los empleados, contratistas de salud y oficiales del DCR. Es la responsable de elaborar y poner en práctica las órdenes normas, protocolos, reglamentos y políticas decisionales relativas al entrenamiento, supervisión, disciplina y prácticas de seguridad y protección a ser empleadas por el DCR. [...]
>
> [Al Director de Seguridad de la Cárcel de Mujeres de Bayamón, Roberto del Valle porque] era la persona encargada directamente de la institución donde se albergaba a [la Sra. Colón Ponce]. Como supervisor de seguridad de la Institución tenía la responsabilidad de supervisar a su personal y encargarse de que recibieran el adiestramiento adecuado, cosa que no ocurrió. [...]
>
> [A la Superintendente del Complejo para la Rehabilitación de Mujeres de Bayamón, Wanda Montañez porque] era la persona encargada directamente de la institución donde se albergaba a [la Sra. Colón Ponce]. Como superintendente de la Institución tenía la responsabilidad de supervisar a su

personal y encargarse de que recibieran el adiestramiento adecuado, cosa que no ocurrió. [...]

[Y al Sargento Erasmo Martínez Torres, supervisor de área del Complejo para la Rehabilitación de Mujeres de Bayamón] como supervisor del área donde falleció [la Sra. Colón Ponce] el día y horas indicadas en esta demanda.[3]

Cada uno de los Codemandados fue demandado tanto en su capacidad oficial como en su capacidad personal. Los Demandantes señalaron varias causas de acción.

La primera causa de acción alega que la Policía de Puerto Rico violó los derechos civiles de la Sra. Colón Ponce al no desviarla de inmediato para tratamiento médico según disponen la leyes y política pública del Gobierno de Puerto Rico.[4] Alegan que en vez de hacer esto, la mantuvieron bajo custodia sin el beneficio de un abogado y sin que hubiese cargos pendientes. Por lo tanto, la *Demanda* arguye que el Gobierno de Puerto Rico responde al amparo de los Artículos 1536 y 1540 del Código Civil de Puerto Rico, *supra*, al "no elegir adecuadamente [...] a todos los policías que intervinieron en la situación antes narrada para atender una situación de persona en crisis".[5]

La *Demanda* continúa alegando que los oficiales que intervinieron con la Sra. Colón Ponce nunca fueron adiestrados bajo la Orden General Número 600-628 de la Policía, Intervención con Personas en Crisis de 18 de junio de 2019 (Orden General Núm. 600). "Es evidente que sus supervisores tampoco".[6] A sabiendas de la Reforma de la Policía, la Orden General Núm. 600 y el Acuerdo para la Reforma Sostenible de la Policía de Puerto Rico (Acuerdo), "poco o nada han hecho [los supervisores] para adiestrar a sus policías bajo estos protocolos. Ello transciende el campo de la negligencia y constituye la indiferencia deliberada requerida bajo [la

---

[3] *Íd.*, págs. 3-4.
[4] *Íd.*, pág. 12.
[5] *Íd.*
[6] *Íd.*

Sección 1983]".[7] Por esto, alegan los Demandantes, la Policía y sus funcionarios en su capacidad individual responden por los daños causados a la Sra. Colón Ponce.

Como segunda causa de acción, señalan que las actuaciones de los Codemandados violentaron varias secciones de la Constitución de Puerto Rico, *supra*. En particular, señalaron que la conducta de los Codemandados violó las disposiciones de: la Sección 1, Artículo II de nuestra Constitución, *supra,* que establece que la dignidad del ser humano es inviolable; de la Sección 7, Artículo II, que reconoce como derecho fundamental el derecho a la vida, a la libertad y al disfrute de la propiedad; y de la Sección 11, Artículo II que reconoce los derechos de los imputados por un delito.[8] También alegan que a la Sra. Colón Ponce se le violaron sus derechos al amparo de la Sección 19, Artículo VI de nuestra Constitución, *Íd.*, que dispone que "[s]erá política pública del Estado Libre Asociado [...] reglamentar las instituciones penales para que sirvan sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Alegan que en este sentido responden los Codemandados en su capacidad personal.

Como tercera causa de acción, los Demandantes alegan que al amparo de la Sección 1983:

> 49. Los [Codemandados] responden en su carácter personal, pues según información que recibieron los demandantes[,] éstos so color de autoridad e intencionalmente, como funcionarios del ELA, llevaron a cabo los actos antes relatados, en violación de los derechos civiles de la causante de los aquí demandantes, privándole de su libertad sin el debido proceso de ley, amenazando su vida e integridad corporal, impidiéndole el ejercicio de su derecho a la libertad, a la vida y a su dignidad. Todo ello en violación de la Constitución de Estados Unidos, Enmiendas IV, VII y XIV. Como señalamos en el apartado II de este escrito, los aquí demandantes recibieron información que apunta a que Shannel era agredida, maltratada y

---

[7] *Íd.*
[8] *Íd.*, pág. 14.

vejada por los funcionarios de Corrección y oficiales de custodia al punto que intencionalmente causaron su muerte, en violación a la disposición de la Ley federal de Derechos Civiles.[9]

Con relación a esta causa de acción, el apartado II de la *Demanda* dispone que:

> 29. Shannel fue sometida a tratos inhumanos, crueles y degradantes al habérsele privado de los servicios de salud mental que su condición requería, provocándole intensos sufrimientos y angustias mentales previo a su fallecimiento, todo ello en circunstancias muy extrañas y sin que los funcionarios del DCR a cargo de su custodia recibieran el adiestramiento ni la supervisión requerida para manejar este tipo de casos dentro del sistema correccional.[10]

De particular importancia, alegan que este trato fue causado porque los supervisores incumplieron con su obligación de proveer y facilitar entrenamiento a los oficiales y personal médico que se encontraban bajo sus órdenes.[11]

Así las cosas, entre el 13 de octubre de 2023 y 1 de diciembre de 2023, cada uno de los Codemandados presentó una *Moción de Desestimación.*[12] Levantaron una serie de defensas a favor de la desestimación, en particular: que la *Demanda* no expone alegaciones específicas en contra del carácter personal de los Codemandados y que éstos están protegidos por el manto de la inmunidad cualificada.[13] En consecuencia, solicitaron la desestimación de la *Demanda* presentada en contra de sus caracteres personales. El 18 de diciembre de 2023, la parte demandante presentó su *Oposición a Mociones de Desestimación Presentadas por los Codemandados.*[14]

Ese mismo día, el TPI emitió una *Sentencia Parcial,*[15] mediante la cual desestimó las reclamaciones contra los demandados en sus

---

[9] *Íd.*
[10] *Íd.*, pág. 8.
[11] *Íd.*, pág. 15.
[12] *Íd.*, Anejos II-VI, págs. 19-71.
[13] *Íd.*
[14] *Íd.*, Anejo VII, págs. 72-87.
[15] *Íd.*, Anejo IX, págs. 90-91.

capacidades personales. Esta fue notificada el próximo día, 19 de diciembre de 2023.[16] Inconforme con la determinación del TPI, el 9 de enero de 2024, los Demandantes (ahora Apelantes) presentaron la *Moción de Apelación* que tenemos ante nuestra consideración.

La *Apelación* señaló como único error que:

**ERRÓ EL TPI AL DESESTIMAR LA DEMANDA CONTRA LOS CODEMANDADOS EN SU CAPACIDAD PERSONAL, EN CONTRAVENCIÓN A LA LEY FEDERAL DE DERECHOS CIVILES (42 U.S.C. SEC. 1983) Y LA REGLA 10.2 DE PROCEDIMIENTO CIVIL.**[17]

Posteriormente, los Codemandados (ahora Apelados) presentaron sus *Alegatos en Oposición* individualmente.

**II.**

Con el beneficio de la comparecencia de las partes, procedemos a discutir el derecho aplicable a nuestra controversia.

**A.**

Sabido es que el Gobierno de Puerto Rico disfruta de inmunidad soberana, por lo que no puede ser demandado salvo que este lo permita expresamente.[18] *Porto Rico v. Rosaly*, 227 US 270, 273 (1913). Como una renuncia parcial de su inmunidad soberana, el Gobierno de Puerto Rico aprobó la Ley de Pleitos, *supra*, que crea una causa de acción para demandar al Gobierno de Puerto Rico por los daños y perjuicios causados por los actos u omisiones "de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia". *Íd.*, Art. 2(a). En virtud de esta ley, el Estado responde por los actos u omisiones culposas o negligentes de un funcionario. Esto impide que

---

[16] *Íd.* Anejo VIII, págs. 88-89.
[17] *Recurso de Apelación*, pág. 9.
[18] En *Porto Rico v. Rosaly*, 227 US 270 (1913), el Tribunal Supremo de los Estados Unidos resolvió que: "It is not open to controversy that, aside from the existence of some exception, the government which the organic act established in Porto Rico is of such nature as to come within the general rule exempting a government sovereign in its attributes from being sued without its consent."

un demandante persiga una acción en contra de un funcionario del Gobierno luego de haber recaído una sentencia en contra del Estado. *Viuda de Valentín v. E.L.A.*, 84 DPR 112, 120 (1961). Esto puesto que la Ley de Pleitos persigue "evitar que un demandante recobre tanto del Gobierno como del empleado". *De Paz Lisk v. Aponte Roque*, 124 DPR 472, 493 (1989).

Ahora bien, aunque el propósito de la Ley de Pleitos sea evitar que se recobre múltiples veces del Estado, esta no impide que se presente una acción en contra de un funcionario público en su capacidad oficial y en su capacidad personal. Esto es, cuando un funcionario público ejecuta la política pública del Gobierno de Puerto Rico, puede incurrir en responsabilidad oficial y personal.

Las normas y doctrinas de inmunidad soberana no son pertinentes cuando también se busca demandar a un funcionario del Gobierno en su capacidad personal. "La inmunidad de un funcionario público contra la responsabilidad civil que pueda generar su conducta en el desempeño de sus deberes oficiales es una inmunidad separada y distinta a la inmunidad del Estado". *Romero Arroyo v. E.L.A.*, 127 DPR 724, 744 (1991). Por lo tanto, ante estos supuestos, debemos aplicar la doctrina de inmunidad cualificada. La inmunidad cualificada es una defensa proveniente del ámbito federal y derecho común que puede levantar un funcionario del Gobierno ante una demanda en su capacidad personal. "[L]a inmunidad de los funcionarios públicos opera como una limitación sustantiva de la responsabilidad personal por daños en que puedan incurrir dichos funcionarios en el descargo de sus deberes y responsabilidades oficiales". *Íd.*, pág. 745.

> En resumen, la inmunidad de un funcionario público no es una extensión ni tampoco es parte de la inmunidad del Estado. Mientras que la doctrina de inmunidad del Estado opera como una limitación de responsabilidad civil respecto a la entidad gubernamental como cuerpo político, las normas de inmunidad condicionada de los funcionarios públicos

operan como una limitación de la responsabilidad civil personal de dichos funcionarios. Por ello, la concesión de inmunidad personal a un funcionario público no tiene efecto alguno sobre la renuncia del Estado a su inmunidad contra demandas por los daños que ocasionen los actos culposos o negligentes de sus empleados.
*Íd.*

"No cabe duda de que como cuestión de política pública es menester que los servidores públicos estén protegidos contra demandas presentadas en su contra por el hecho de haber ejercido de forma razonable y de buena fe funciones que contienen un elemento de discreción". *De Paz Lisk v. Aponte Roque, supra*, pág. 495. Esta doctrina dispone que "[u]n funcionario o empleado que no actúa de buena fe es responsable, pero aun cuando medie la buena fe responde si actuó irrazonablemente o si debió haber sabido que su conducta era ilegal". *Acevedo v. Srio. Servicios Sociales*, 112 DPR 256 (1982).

Anteriormente se reconocían dos escrutinios aplicables al análisis de la inmunidad cualificada: el objetivo y el subjetivo. Al momento de definir los criterios objetivos y subjetivos, el Tribunal Supremo federal lo hizo describiendo las situaciones donde la inmunidad no aplicaba. En primer lugar, "el escrutinio objetivo denegaba inmunidad por violaciones de carácter negligente de derechos claramente establecidos". *P.P.D. v. Gobernador II*, 139 DPR 984, 995 esc. 3 (1996) (Voto particular emitido por el Juez Asociado Señor Rebollo López). El escrutinio subjetivo "denegaba inmunidad a un oficial si éste actuaba con malicia a pesar de que el derecho al momento del acto no estuviese claramente establecido". *Íd.* Sin embargo, en *Harlow v. Fitzgerald*, 457 US 800 (1982), el Tribunal Supremo federal descartó el análisis de dos escrutinios, considerando que el análisis subjetivo creaba una carga indebida sobre el sistema jurídico y fomentaba un proceso largo y disruptivo

de descubrimiento de prueba.[19] Por lo tanto, el Foro federal adoptó como criterio que, por lo general, los funcionarios públicos no gozan de inmunidad personal por daños civiles cuando sus conductas violan derechos estatutarios o constitucionales claramente establecidos de los cuales una persona prudente y razonable tendría conocimiento. *Íd.*, pág. 818.

En resumen, un funcionario público responde en su carácter personal si en el descargo de sus funciones no actuó de buena fe, incurrió en una conducta ilegal o en algún acto delictivo o intencional. También responde en su carácter personal si aun actuando de buena fe, viola un derecho claramente establecido cuyo funcionario tenía conocimiento de o debió tenerlo.

**B.**

El Tribunal Supremo de Puerto Rico ha reconocido en varias ocasiones que los tribunales de Puerto Rico están capacitados para atender reclamos que surjan al amparo de la Sección 1983, *supra. Acevedo v. Srio. Servicios Sociales, supra*, pág. 259. "Al ser ésta una causa de acción federal sobre la cual ejercemos jurisdicción concurrente, estamos obligados a seguir nuestras propias opiniones anteriores y las decisiones del Tribunal Supremo de Estados Unidos". *Declet Ríos v. Depto. de Educación,* 177 DPR 765, 777 (2009). Esta ley "es un vehículo para que los ciudadanos puedan hacer valer los derechos que [confiere] la Constitución y las leyes de Estados Unidos frente a aquellas personas que abusan de su poder

---

[19] [I]t now is clear that substantial costs attend the litigation of the subjective good faith of government officials. Not only are there the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service. There are special costs to "subjective" inquiries of this kind. Immunity generally is available only to officials performing discretionary functions. In contrast with the thought processes accompanying "ministerial" tasks, the judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions. These variables explain in part why questions of subjective intent so rarely can be decided by summary judgment. Yet they also frame a background in which there often is no clear end to the relevant evidence. Judicial inquiry into subjective motivation therefore may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be peculiarly disruptive of effective government. *Harlow v. Fitzgerald,* 457 US 800, 818 (1982).

cuando actúan so color de autoridad estatal". *Leyva et al. v. Aristud et al.*, 132 DPR 489, 500 (1993). La Sección 1983 dispone que:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer´s judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Por lo tanto, "un demandante puede prevalecer en su reclamo por violación a sus derechos civiles al amparo del mencionado estatuto si demuestra que el demandado actuó so color de autoridad y dicha actuación le privó de los derechos garantizados por la Constitución y las leyes de Estados Unidos". *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1054 (2013). Debemos tener en mente que esta ley no crea derechos sustantivos, sino que provee un mecanismo para vindicar cualquier derecho civil que se haya conferido. "Así, el primer paso en este tipo de reclamación es identificar cuál es el derecho constitucional alegadamente infringido". *Íd.* Este derecho puede surgir de un estatuto, una cláusula constitucional, un derecho establecido jurisprudencialmente o cualquier otro derecho reconocido, ya sea al nivel estatal como al nivel federal.

Nuestro Tribunal Supremo, interpretando la jurisprudencia federal, ha señalado que en el caso "de los supervisores, la imposición de responsabilidad no se hace a base de la doctrina de responsabilidad vicaria, ya que tanto él como sus subalternos trabajan para un mismo patrono: el Estado. Su responsabilidad está fundada en los actos u omisiones en el desempeño de sus funciones de supervisión". *Leyva et al. v. Aristud et al.*, *supra*, pág. 501 (citando a *Gutiérrez-Rodríguez v. Cartagena*, 882 F.2d 553, 562 (1er Cir. 1989); *Figueroa v. Aponte-Roque*, 864 F.2d 947, 953 (1er Cir. 1989);

*Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901–902 (1er Cir. 1988)). Tanto los foros federales como los de Puerto Rico han rechazado que un supervisor responda por una reclamación al amparo de la Sección 1983 por la mera negligencia en su deber de supervisar.

> Conforme a la doctrina de la mayoría que hoy adoptamos, para que la dejadez del supervisor active la protección de la citada [Sección 1983], **sus actos u omisiones deben reflejar una indiferencia imprudente o insensible** (*reckless or callous indifference*) a los derechos constitucionales del demandante, o un comportamiento que pueda ser calificado como condonación o aquiescencia en la supervisión, que pueda caracterizarse como negligencia grave.
>
> Al hacer esta determinación, el tribunal deberá evaluar la prueba a los fines de determinar si el demandante demostró, mediante preponderancia de la prueba, **que el supervisor tenía conocimiento previo de actos ilícitos de su subalterno y mostró indiferencia imprudente o insensible a los derechos constitucionales de los ciudadanos al no tomar las medidas correctivas apropiadas y necesarias para evitar la recurrencia de estos actos**.
>
> Un acto aislado no es suficiente para invocar la protección de la [Sección 1983] de la Ley federal de Derechos Civiles, *supra.* **Se requiere que el supervisor tuviera conocimiento previo de varias actuaciones ilegales y abusivas de su subalterno o que hubiese estado presente en alguna de las ocasiones en que se violaron los derechos de un ciudadano.**
>
> También **hay que probar que él tenía la responsabilidad de supervisar los empleados y que, mediante sus propios actos u omisiones, permitió que sus subordinados violaran los derechos constitucionales del demandante**. No es necesario que el supervisor haya despojado al demandante de sus derechos constitucionales mediante sus propias manos. **Puede ser también responsable cuando ayuda a otros o cuando omite ejercer un deber impuesto**. Lo mismo ocurre si pone en movimiento una cadena de eventos o actuaciones de otros que debió prever que causarían daño al demandante. **El nexo causal se demuestra mediante la prueba de un "ligamen causal afirmativo" (*affirmative links*) entre sus actos y el daño causado por sus subalternos.** Por último, hay que demostrar que como resultado de su indiferencia los demandantes sufrieron un daño.
>
> *Íd.*, págs. 502-504. (Énfasis nuestro) (Citas omitidas).

La indiferencia imprudente o insensible también ha sido reconocido como la indiferencia deliberada ("*deliberate indifference*") discutida por los foros federales. Este estándar implica algo más que

una mera negligencia, pero se satisface con algo menos que actos u omisiones con el fin de causar daño. *Farmer v. Brennan,* 511 US 825, 835 (1994). Está posicionado entre la negligencia y la intención.

Cuando se evalúa la conducta de un funcionario de corrección, el Tribunal Supremo federal ha reconocido que su conducta debe ser evaluada en el contexto de la Enmienda VIII de la Constitución de Estados Unidos, *supra,* que prohíbe los castigos crueles e inusitados. *Íd.,* pág. 832. Por lo tanto, aunque la Constitución federal no exige cárceles cómodas, no permite cárceles inhumanas. *Íd.* En consecuencia, el Gobierno y los funcionarios de cárceles deben garantizar un nivel de seguridad para la comunidad encarcelada. Esto incluye proveer por las necesidades urgentes de salud de los confinados. *Estelle v. Gamble,* 429 US 97, 104 (1976). No hacerlo constituye indiferencia deliberada que surte una causa de acción al amparo de la Sección 1983. *Íd.*

Ahora bien, esto no significa que toda reclamación que alegue que un confinado no haya recibido atención médica constituye una violación a la VIII Enmienda, *supra.* Por lo tanto, "para formular una alegación reconocible, **[quien reclame una violación de derechos] debe alegar actos u omisiones suficientemente perjudiciales para demostrar una indiferencia deliberada** hacia necesidades médicas graves". *Íd.,* pág. 106. (Traducción nuestra) (Énfasis nuestro).

## C.

En el 2013, la Policía de Puerto Rico y el Departamento de Justicia de los Estados Unidos suscribieron un Acuerdo ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico. Este Acuerdo tiene el propósito de garantizar prácticas policiales constitucionalmente aceptables dentro de nuestra jurisdicción para el beneficio de la ciudadanía puertorriqueña. *United States of America v. Commonwealth of Puerto Rico and the Puerto Rico Police*

*Department, supra.* Case Num. 12-cv-2039 (D.P.R. 2013) (GAG). Dicha reforma se encarga de considerar las violaciones constitucionales cometidas por la Policía de Puerto Rico en el descargo de sus funciones documentadas por el Departamento de Justicia de los Estados Unidos durante el año 2011.

En particular, el Acuerdo detalla procedimientos, políticas públicas, formas de capacitación, supervisión interna y externa y datos que contribuyen al patrón de conducta indebida y uso de fuerza irrazonable por la Policía de Puerto Rico. En consecuencia, incluye los protocolos y directrices que deben seguir los agentes de la Policía ante una situación donde vayan a intervenir con una persona sufriendo una crisis de salud mental. Esta dispone que:

> 56. La PPR desarrollará políticas y procedimientos para mejorar su respuesta a situaciones de crisis de individuos con problemas de comportamiento o salud mental y minimizar el uso innecesario de fuerza contra dichos individuos. Para alcanzar este resultado, la PPR, además de proveerle a todos sus miembros un adiestramiento básico de respuesta a personas con problemas de comportamiento o crisis de salud mental, creará y adiestrará abarcadoramente a un equipo de primera respuesta de intervención en crisis conocido como Equipo de Intervención en Crisis ("CIT", por sus siglas en inglés). El CIT incorporará los siguientes requisitos:
>
> a) El CIT desarrollará políticas y procedimientos para la transferencia de custodia o referido voluntario de los individuos entre la PPR, las instalaciones receptoras y las agencias locales de servicio de salud mental y servicios sociales.
>
> b) Las políticas y procedimientos del CIT exigirán que cuando los miembros de la PPR encuentren menores en estados de crisis de salud mental, serán referidos a los servicios de salud mental apropiados localizados en la comunidad.
>
> c) Los integrantes del CIT serán asignados a las divisiones de operaciones de campo y mantendrán sus turnos de patrullaje normales, excepto cuando sean llamados a responder a eventos de posibles crisis de comportamiento o de salud mental donde puede ser necesario que los integrantes del CIT respondan fuera de su precinto o distrito de patrullaje asignado.
>
> Acuerdo, *supra*, págs. 35-36.

El Acuerdo está acompañado por varias órdenes de la Policía de Puerto Rico para establecer los protocolos específicos ante intervenciones con el público. En particular, la Orden General Núm.

600, *supra,* dispone los procedimientos que deben seguir los miembros de la Policía durante intervenciones con personas en crisis. Esto contempla personas con crisis emocionales, ausencia de salud mental o problemas de conducta provocadas por trastornos mentales.

**D.**

Las alegaciones en una demanda tienen el propósito de presentarle al tribunal los hechos en que las partes apoyan o niegan el derecho en controversia, precisar aquellos que las partes acepten como ciertos y señalar aquellos se consideran en controversia y sobre cuales se presentará prueba para que el tribunal formule las conclusiones procedentes. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil,* 6ª ed. rev., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 279. La Regla 6.1 de Procedimiento Civil, *supra,* procedente de la Regla 8 de Procedimiento Civil federal, Fed. R. Civ. P. 8, establece la norma sobre la formulación de alegaciones en una demanda y dispone que:

> Una alegación que exponga una solicitud de remedio contendrá:
> (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y
> (2) una solicitud del remedio a que crea tener derecho.
> Podrán ser solicitados remedios alternativos o de diversa naturaleza.

Nuestro Tribunal Supremo ha determinado que al amparo de la Regla 6.1 de Procedimiento Civil, "no tienen que exponerse detalladamente en la demanda todos los hechos que dan base a la reclamación". *León Torres v. Rivera Lebrón*, 204 DPR 20, 40 (2020). "[A] la parte que persigue un remedio **solo se le requiere presentar en su alegación una reclamación redactada de forma general**". J. A. Echevarría Vargas, *Procedimiento civil puertorriqueño*, 3ª ed. rev., Bogotá, Ed. Nomos S.A., 2023, pág. 95. (Énfasis nuestro).

> La R. 6.1, 2009, al igual que su equivalente federal, impone al demandante una obligación

relativamente leniente. Un demandante cumple con la exigencia de la [Regla 6.1] al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular una contestación. [...] No obstante, si bien el deber que se le exige al demandante es bastante liberal y se le requiere brevedad en su exposición, la alegación debe aún contener la suficiencia fáctica que se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta.

R. Hernández Colón, *op. cit.*, pág. 287.

Por lo tanto, la información contenida en una demanda "debe estar a tono con los requisitos mínimos de notificación según requiere el debido proceso de ley". *León Torres v. Rivera Lebrón, supra*, pág. 40.

A diferencia de la normativa en Puerto Rico, el Tribunal Supremo federal descartó el análisis laxo sobre las alegaciones. En los casos de *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007) y *Ashcroft v. Iqbal*, 556 US 662 (2009), el Foro federal pautó y extendió a toda reclamación civil federal la normativa de "plausibilidad". "El estándar de plausibilidad requiere que las alegaciones contengan una relación fáctica suficiente que, aceptada como cierta, establezca que la reclamación del remedio es plausible de su faz". R. Hernández Colón, *op. cit.*, pág. 287.

Este estándar no fue adoptado expresamente por el Comité Asesor Permanente que revisó las Reglas de Procedimiento Civil de 1979, 32 LPRA Ap. III. Sin embargo, ante los cambios suscitados por el Tribunal Supremo federal, suscitados por los casos de *Ashcroft v. Iqbal, supra*, y *Bell Atlantic Corp. v. Twombly, supra*, el Comité "adoptó una solución, la cual aunque no incorpora el estándar de plausibilidad, se encamina en la misma dirección". R. Hernández Colón, *op. cit.*, págs. 280-281. En particular, el Profesor Hernández Colón hace hincapié en el cambio al lenguaje de la Regla 6.1 de Procedimiento Civil entre el 1979 y el 2009. Bajo las reglas del 1979, la Regla 6.1 disponía que una alegación contendrá "una relación sucinta y sencilla **de la reclamación demostrativa** de que el

peticionario tiene derecho a un remedio". Sin embargo, en el 2009, la Regla 6.1 fue cambiada para disponer que una alegación contendrá "una relación sucinta y sencilla **de los hechos demostrativos** de que la parte peticionaria tiene derecho a un remedio". Por lo tanto, aunque un demandante no tenga que alegar todos los hechos específicos que responsabilicen a un demandado, sí debe alegar hechos que no sean hipotéticos y que no estén basados en conclusiones de derecho.

La Regla 10.2 de Procedimiento Civil, *supra*, reconoce como defensa que la parte demandante haya dejado "de exponer una reclamación que justifique la concesión de un remedio". *Íd.*, R. 10.2(5). "Al resolver una moción de desestimación por ese fundamento, el tribunal toma como ciertos todos los hechos alegados e interpreta aseveraciones de la demanda en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle". R. Hernández Colón, *op. cit.,* pág. 307. "Solo se podrán entender como ciertos aquellos hechos que fueran correctamente alegados sin considerar las alegaciones con contenido hipotético". J. A. Echevarría Vargas, *op. cit.,* pág. 131. Esto es, el tribunal **debe eliminar del análisis las conclusiones legales y los elementos de la causa de acción apoyados por aseveraciones conclusivas**. R. Hernández Colón, *op. cit.* (Énfasis nuestro). "A esos efectos, los foros judiciales deben razonar si, a la luz de la situación más favorable al demandante, y resolviendo las dudas a favor de éste, la demanda es suficiente para constituir una reclamación válida". *González Méndez v. Acción Social et al.,* 196 DPR 213, 235 (2016).

Aunque las Reglas de Procedimiento Civil de 2009 no adoptaron el estándar de plausibilidad de manera expresa, nuestro Tribunal Supremo se ha expresado más y más a favor de la adopción

de la doctrina federal.[20] Tan reciente como a inicios del 2024, mediante voz del Juez Asociado Señor Martínez Torres, el Tribunal Supremo pautó la normativa sobre una desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil. Primero "los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente". *Costas Elena v. Magic Sport Culinary Corp.*, 213 DPR ___, 2024 TSPR 13, pág. *4. "Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, **la demanda establece una reclamación plausible** que justifique la concesión de un remedio". *Íd.* (Énfasis nuestro). "[S]i tras este análisis el Tribunal aún entiende que no se cumple con el **estándar de plausibilidad**, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba". *Íd.*, pág. *5. (Énfasis nuestro).

En resumen, "[a]unque las aseveraciones en una alegación deben ser concisas y se deben de considerar como ciertas ante una moción de desestimación, no pueden estar fundadas en generalidades, conclusiones de derecho o recitación de derecho aplicable". C. Zeno Santiago, *Sumario procedimiento civil puertorriqueño,* 1ª ed., San Juan, Ed. SITUM, 2023, pág. 74. La falta de hechos que plausiblemente apoyen los remedios solicitados debe resultar en la desestimación del recurso. *Íd.*, págs. 74-75. Véanse, además, R. Hernández Colón, *op. cit.*, pág. 287; *Costas Elena v.*

---

[20] [L]o que sí es necesario determinar es **si los hechos alegados en la demanda establecen de su faz una reclamación que sea plausible** y que, como tal, justifique que el demandante tiene derecho al remedio que busca *o, al menos, a parte de este.* Si se determina que los hechos alegados "no cumple[n] con el estándar de plausibilidad, el tribunal debe desestimar la demanda". Lo que se busca con el análisis de plausibilidad es el "no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba pueden probarse las alegaciones conclusorias". *Trinidad Hernández v. ELA*, 188 DPR 828, 851 (2013) (Opinión disidente del Juez Asociado Señor Kolthoff Caraballo) (Énfasis nuestro) (Citas omitidas).

*Magic Sport Culinary Corp., supra*; *Bell Atlantic Corp. v. Twombly, supra*; *Ashcroft v. Iqbal, supra.*

**E.**

Antes de resolver, debemos discutir el caso *Avilés Colón v. ELA,* KLAN202100209,[21] resuelto por un panel hermano. Este discute una controversia relacionada a la nuestra y la parte apelante incluye como argumento persuasivo. En *Avilés Colón,* este Tribunal revocó una sentencia parcial del Tribunal de Primera Instancia que desestimó una demanda por violación de derechos civiles al amparo de la Sección 1983 en contra de la capacidad personal del señor Henry Escalera, comisionado de la Policía de Puerto Rico.

En aquel caso, agentes de la Policía fueron llamados por la señora Elsa Avilés Colón para intervenir con su hijo, Anthony Maldonado Avilés, quien sufría de un ataque de epilepsia. Del expediente, surge que los agentes conocían al Sr. Maldonado y su condición mental. Aun así, durante la intervención, los agentes le dieron muerte al Sr. Maldonado con un disparo a la espalda. Por el uso de fuerza excesiva en una situación que no la justificaba, la Sra. Avilés presentó una demanda[22] en contra de varias personas, incluyendo al comisionado de la Policía en aquel entonces, el Sr. Escalera, tanto en su capacidad oficial como en su capacidad personal.

Luego de varios trámites procesales, el TPI desestimó la demanda en contra de la capacidad personal del Sr. Escalera, por lo que la Sra. Avilés Colón recurrió a este Tribunal. Nuestro panel hermano revocó la determinación del TPI, aduciendo que:

> [E]l reclamo de la Sra. Avilés sobre la responsabilidad personal del Sr. Escalera al amparo de la Sección 1983 cruza el umbral de plausibilidad. Ello, **debido a que el Acuerdo al cual hace referencia en sus alegaciones,**

---

[21] Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Romero García (jueza ponente) y la Juez Méndez Miró.
[22] Tomamos conocimiento judicial del caso JA2020CV00010 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC), entrada núm. 1.

> **unido a los hechos esbozados en la demanda, añaden mayor valor probatorio a sus alegaciones**.
> *Íd.*, pág. 20. (Énfasis nuestro).

Añade el Tribunal que "[d]os oficiales adscritos al cuartel de la policía en el pueblo de Jayuya actuaron so color de autoridad, con total menosprecio a los derechos constitucionales del Sr. Maldonado, y le dispararon en medio de una crisis de salud, sin motivo aparente". *Íd.*, págs. 20-21. "En virtud de lo antes expuesto. Concluimos que la Sra. Avilés alegó en su *Demanda* **de manera clara, concluyente, y que de su faz no da margen a dudas** la presunta indiferencia deliberada del Sr. Escalera y su responsabilidad personal al amparo de la Sección 1983". *Íd.*, pág. 21. (Énfasis en el original).

El foro apelativo determinó que, ante los hechos particulares del caso, el Acuerdo cobraba mayor valor probatorio. Es decir, el deber que exige el Acuerdo, de entrenar y adiestrar a los agentes de la Policía sobre el uso de fuerza en intervenciones con el público, le creaba una obligación de actuar y un conocimiento particular sobre el problema al comisionado de la Policía. *Íd.*, esc. 39, pág. 21. Esto a la luz de varias determinaciones de los foros federales que señalaron el problema endémico de la Policía con el uso de fuerza durante intervenciones con la ciudadanía. Véanse, *Guadalupe-Báez v. Pesquera*, 819 F.3d 509 (1er Cir. 2016); *Hernández-Zorrilla v. Roselló Nevares et al.*, Case Num. 12-cv-02039 (D.P.R. 2021) (SCC); *Rolón-Merced v. Pesquera*, Case Num. 14-cv-01757 (D.P.R. 2017) (DRD). En algunos de estos casos, el Sr. Escalera participó como parte, por lo que tenía conocimiento personal del problema.

**III.**

Habiendo revisado los hechos, esbozado el derecho pertinente y considerado los argumentos de las partes, nos encontramos en posición para resolver.

No existe impedimento para que un funcionario público sea demandado simultáneamente en su capacidad oficial y personal. Aun así, es norma reiterada que, como cuestión de política pública, los funcionarios públicos pueden levantar como defensa la inmunidad cualificada cuando ejercen de forma razonable y de buena fe funciones oficiales que contienen un elemento de discreción. La inmunidad cualificada, por lo tanto, es improcedente cuando el funcionario actuó de mala fe, incurrió en conducta delictiva o actuó de forma intencional para violar derechos reconocidos. Aun cuando el funcionario haya actuado de buena fe, la inmunidad cualificada no lo protege si su conducta violó un derecho claramente establecido cuya existencia debió haber tenido conocimiento.

Ahora bien, esta norma aplica cuando trata de la conducta propia del funcionario. Distinto es cuando se reclama por la conducta de un supervisor, que no tuvo contacto directo con la ciudadanía, sino responde por los actos u omisiones de sus subalternos. Cuando trata del deber de un supervisor, este no responde por la mera negligencia en un deber de supervisar. En estas situaciones, el supervisor debió haber actuado con indiferencia deliberada hacia una conducta ilegal y abusiva conocida y reiterada de sus subalternos. En *Avilés Colón*, la indiferencia deliberada del Sr. Escalera surge claramente al conocer del problema endémico de uso excesivo de fuerza por la Policía y no tomar medidas para prevenirlo o, en la alternativa, permitirlo por su omisión a actuar.

No obstante, lo resuelto en *Avilés Colón*, determinaciones sobre la aplicabilidad de la inmunidad cualificada deben hacerse caso a caso, por lo que no debe ser una determinación automática o mecánica. Lo cierto es que, aunque similares, los hechos de *Avilés-Colón* no son los mismos de los del caso ante nuestra consideración

y existen diferencias marcadas. En primer lugar, no estamos ante una intervención violenta de la Policía. En el caso de marras, los Demandantes alegan que la Sra. Colón Ponce no recibió la atención médica debida por parte de los agentes interventores de la Policía. Aun así, estos agentes, que intervinieron con la Sra. Colón Ponce el 20 de abril de 2022 y la mantuvieron bajo custodia hasta el 22 de abril de 2022 (cuando se presentó una denuncia en su contra), no fueron incluidos como parte en el caso.

Las Demandantes no alegan un conocimiento previo de los actos ilícitos de los subalternos del Comisionado fuera del contenido de la Orden General Núm. 600 y el Acuerdo. Sin embargo, estas fueron adoptadas con el propósito de atender problemas en las intervenciones directas entre la Policía y la ciudadanía. En consecuencia, no tienen el mismo valor probatorio que nuestro panel hermano les otorgó en *Avilés Colón*.

En cuanto a los funcionarios del DCR, los tribunales han reconocido que los confinados tienen un derecho a recibir atención médica urgente. Sin embargo, quien alega una indiferencia deliberada por parte de funcionaros de corrección debe alegar actos u omisiones suficientemente perjudiciales para demostrarla. En otras palabras, debe incluir hechos demostrativos, según dispone nuestra Regla 6.1 de Procedimiento Civil, *supra*, que demuestren una indiferencia deliberada hacia necesidades médicas graves.

La formulación de las alegaciones en la *Demanda* no cumple con los requisitos de la Regla 6.1 de Procedimiento Civil. Esta requiere que una alegación relate de manera sencilla y sucinta los hechos demostrativos que demuestren que la parte demandante tiene derecho a un remedio. Para sobrevivir una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, las alegaciones deben superar el estándar de plausibilidad. *Costas Elena v. Magic Sport Culinary Corp., supra.* La plausibilidad requiere

más que una posibilidad de que pueda existir un derecho a una reclamación. La plausibilidad, por lo tanto, requiere que las alegaciones incluyan contenido fáctico que permita al tribunal formular una inferencia razonable de que el demandado es responsable de la conducta alegada. *Ashcroft v. Iqbal, supra*, pág. 678. Las alegaciones tampoco pueden estar fundadas en generalidades, conclusiones de derecho ni recitaciones de derecho aplicable. No podemos olvidar que al surgir de una causa de acción federal (Sección 1983), **estamos obligados a seguir las opiniones del Tribunal Supremo de Puerto Rico y las del Tribunal Supremo federal.** *Declet Ríos v. Depto. de Educación, supra*, pág. 777.

De una lectura favorable de las alegaciones contenidas en la *Demanda* surge que estas no cumplen con el análisis bajo la Regla 10.2(5) de Procedimiento Civil. Estas no contienen hechos particularizados que establezcan ligámenes causales afirmativos entre las conductas de los Codemandados y los daños sufridos por los Demandantes. Al contrario, y de forma excesivamente generalizada, estas están basadas en recitaciones de derecho aplicable y aseveraciones conclusorias. Aplicando las normas sobre la plausibilidad pautadas en *Ashcroft* y *Twombly* por el Tribunal Supremo federal, la Regla 8 de Procedimiento Civil federal (equivalente a la Regla 6.1 de Procedimiento Civil de Puerto Rico) no le abre la puerta al descubrimiento de prueba a un demandante armado únicamente con conclusiones. *Ashcroft v. Iqbal, supra*, pág. 678.

En resumen, la *Demanda* presentada no ha logrado alegar hechos demostrativos para sostener una demanda en contra de las capacidades personales de los Codemandados. Dichas alegaciones no han demostrado hechos para vencer la defensa de inmunidad cualificada que pueden levantar los supervisores. Tampoco podemos aplicar de manera automática lo resuelto en *Avilés Colón*, puesto

que los hechos son marcadamente distintos al caso ante nuestra consideración. Finalmente, las alegaciones no cumplen con los criterios de la Regla 6.1 de Procedimiento Civil o las normas pautadas sobre la plausibilidad.

Por lo tanto, concluimos que el TPI no cometió el error señalado por la parte apelante. En consecuencia, se confirma la desestimación de la *Demanda* en contra de las capacidades personales de los Codemandados.

**IV.**

Por las razones esbozadas, confirmamos la *Sentencia Parcial* del TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones